UNITED STATES of America, Appellee,

v.

**Peter J. McDONOUGH, Defendant, Appellant.**

**No. 91–1221.**

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1991.

Decided March 13, 1992.

Robert H. Astor, Springfield, Mass. by appointment of the Court, for defendant, appellant.

Carole S. Schwartz, Sp. Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

TORRUELLA, Circuit Judge.

On February 28, 1990, appellant, Peter J. McDonough ("McDonough"), was charged on a four count indictment stemming from allegations that he accepted payments from a bookmaker while serving as a police detective for the City of Boston, Massachusetts. On October 29, 1990, a jury verdict of guilty was returned against McDonough on three of the counts. On appeal he challenges the sufficiency of the indictment as well as the appropriateness of the sentence imposed. We affirm.

### FACTS/BACKGROUND

The evidence at trial showed that between 1976 or 1977 and September 25, 1988, McDonough received weekly cash bribes totaling over $160,000 as well as season Boston Celtics tickets from co-de-

---

* Of the Eastern District of Pennsylvania, sitting by designation.

fendants John Baharoian ("Baharoian"), a Roxbury, Massachusetts bookmaker, and his gambling business associate Leonard Teperow ("Teperow")[1] in return for protection of the illegal gambling business in which Baharoian was involved.

Baharoian testified that he began to pay McDonough on a weekly basis in 1976 or 1977, when McDonough was assigned to gaming investigations in the Boston Police district encompassing Baharoian's numbers betting location. Initially he paid McDonough $200.00 per week. At some point in 1984 or 1985, when Baharoian began working for a numbers business run by Stephen Puleo, the weekly payments increased to $500.00. The weekly payments continued until September 25, 1988, when Baharoian and McDonough were both detained and searched by Federal Bureau of Investigation (FBI) agents, following McDonough's and Baharoian's weekly meeting. Baharoian's testimony showed that in exchange for payments, McDonough provided him with protection of his gambling business, in the form of warning him of impending police raids. He also conducted searches of competing numbers gambling locations. Baharoian testified to numerous uncontradicted specific instances where McDonough provided these services.

Baharoian's testimony was corroborated by his former employee, Robert Corbin ("Corbin"), who testified that while he was working for Baharoian in the early 1980's, Baharoian repeatedly warned him of impending police raids. He further testified that the only officer appearing on the raids was McDonough. Moreover, Baharoian told Corbin that Baharoian would "take care of" McDonough.

Other corroborating testimony presented at trial included testimony of numerous FBI agents who observed and overheard conversations between Baharoian and McDonough in a restaurant in Roxbury in 1984. The evidence also included the results of physical surveillance of weekly meetings between Baharoian and McDonough in 1988 and court authorized tape recordings of telephone conversations between the two, as well as during their weekly Sunday meetings in Baharoian's Cadillac. Still photographs admitted as evidence show Baharoian handing McDonough an undisclosed wad of U.S. currency on September 11, 1988. Videotapes, also admitted as evidence, show that on the same date, as well as on September 4, 1988, Baharoian handed McDonough a wad of U.S. currency. Finally, on the date that they were searched following their meeting, McDonough had a $500.00 wad of cash surrounded by a rubber band, in his pocket. Baharoian's pocket was found to have a number of rubber bands in it.

McDonough filed a pretrial motion to dismiss and a posttrial motion for judgment of acquittal as to Counts One and Two, asserting that they lacked in form. The motions were denied. A jury trial was held and McDonough was convicted for participating and conspiring to participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d), the Racketeer Influenced and Corrupt Organization statute ("RICO"), (Counts One and Two), and for conspiring to obstruct enforcement of the laws of the Commonwealth of Massachusetts with intent to facilitate an illegal gambling business, in violation of 18 U.S.C. § 1511, (Count Four).[2]

McDonough's base offense level for the RICO violation under U.S.S.G. § 2E1.1 was calculated to be 19. Pursuant to U.S.S.G. § 3B1.3, the district court added two points for McDonough's abuse of trust as a Boston police detective in a manner that significantly facilitated the commission of his crime. Finally, the district court added two more points for obstruction of justice, because McDonough committed perjury when testifying at trial. *See* U.S.S.G. § 3C1.1. The resulting total offense was 23 for

---

1. Baharoian and Teperow pleaded guilty at earlier dates. Baharoian testified at trial as a government witness.

2. McDonough was acquitted on Count Three of the Indictment, which charged him with aiding and abetting the operation of an illegal gambling business, in violation of 18 U.S.C. §§ 1955 and 2.

which McDonough was sentenced to fifty-two months imprisonment, twenty-four months supervised release, a twenty thousand dollar fine and a one hundred fifty dollar special assessment.

McDonough appeals the district court's denial of his motion to dismiss and the enhancement of his sentence.

## DISCUSSION

*The Indictment:*

The sections of the RICO statute under which McDonough was convicted, 18 U.S.C. 1962(c) and (d), (Counts One and Two) read as follow:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. (Count Two)
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections 1(a), (b) or (c) of this section. (Count One)

McDonough claims that the indictment as to Counts One and Two is insufficient in that it fails to allege a nexus between the alleged enterprise and the purported pattern of racketeering activity. In other words, he asserts that the indictment does not properly allege a nexus between the Boston Police Department and the pattern of alleged racketeering activity. In support of his argument he cites three cases, *United States v. Qaoud*, 777 F.2d 1105 (6th Cir.1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986); *United States v. Cauble*, 706 F.2d 1322 (5th Cir. 1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984) and *United States v. Nerone*, 563 F.2d 836 (7th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978). A review of those cases reveals that they deal with the burden of proof imposed on the government to establish a nexus for a RICO conviction, not with the sufficiency of the in-dictment in alleging a nexus. Thus they are inapplicable.

 "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citations omitted). Furthermore, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* (citations omitted).

 Count One of the indictment reads in pertinent part:

> 2. The Boston Police Department did constitute an Enterprise within the meaning of 18 U.S.C. § 1961(4), the activities of which affected interstate commerce.

> • • • • •

> 4. ... the defendant

### PETER J. MCDONOUGH

> and other persons known and unknown to the Grand Jury, being employed by and associated with the Enterprise described in paragraphs 1 and 2 above, did unlawfully, willfully and knowingly combine, conspire, confederate and agree with each other, and with persons known and unknown to the Grand Jury, *to conduct and participate in the conduct of the affairs of the Enterprise, which was engaged in and the activities of which affected interstate commerce, through a pattern of racketeering activity.*

> • • • • •

> 7. The pattern of racketeering activity, as defined by Title 18, United States Code, Section 1961(1), *through which the defendant PETER J. MCDONOUGH agreed to conduct and participate in the conduct of the affairs of the Enterprise consisted of acts involving bribery*

*in violation of Massachusetts General Laws, Ch. 268A, § 2 and Massachusetts common law, ...*

(emphasis ours). The indictment in Count One then listed eight separate acts, A–H, which constituted racketeering. Count Two of the indictment similarly makes the allegations in Count One alleging a nexus between the racketeering activity and the enterprise.

We need say no more than that the indictment as to Counts One and Two more than suffices. Tracking the language of the RICO statute, they fairly inform McDonough of the charges against him and sufficiently apprise him of the charges so that he may plead an acquittal or conviction in bar of future prosecutions. *See id.* Moreover, the indictments clearly allege a nexus between the alleged racketeering activity, bribery and the enterprise, the Boston Police Department. Thus, we affirm the district court's denial of McDonough's motion to dismiss.

*Obstruction of Justice:*

██ United States Sentencing Guideline subsection 3C1.1 reads in pertinent part:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

McDonough testified on his own behalf at trial. Contrary to the overwhelming evidence presented against him, he testified that the money he received from Baharoian were loans and not bribes. The district judge appraised McDonough's testimony and found that he had committed perjury. The district judge stated that "in addition to other elements of his testimony, the central false testimony is that the money he received was being received as a loan and not as a bribe." (Tr. 2–6–91 p. 14). Accordingly, he enhanced McDonough's offense level by two points.

McDonough claims that the district court erred in applying the enhancement. In support of his argument he relies on paragraph 3 of the commentary to § 3C1.1, which reads:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt is not a basis for application of this provision.

According to McDonough, he was only exercising his constitutional right when he testified and, therefore, the enhancement was not applicable. We disagree.

██ We note at the outset that "no criminal defendant enjoys a constitutional privilege to testify falsely." *United States v. Batista–Polanco,* 927 F.2d 14, 22 (1st Cir.1991). Furthermore, for sentencing purposes, due process is not violated where perjury is established by a preponderance of the evidence. *United States v. Rehal,* 940 F.2d 1, 6 (1st Cir.1991) (citations omitted). And we accord the sentencing court's application of the Sentencing Guidelines "considerable deference." *United States v. Martinez,* 922 F.2d 914, 925 (1st Cir. 1991) (citations omitted). "Due deference in this context means that, absent mistake of law, we will review the sentencing court's fact based application of the guidelines only for clear error." *Id.* (citations omitted). Finally, "'where there is more than one plausible view of the circumstances, a sentencing court's choice among supportable alternatives cannot be clearly erroneous.'" *Id.* (citations omitted).

The evidence presented at trial overwhelmingly supports the district court's finding of perjury. Baharoian testified that the payments were bribes. Surveillance video tapes and still photographs clearly showed McDonough accepting cash payments. McDonough was carrying $500.00 cash when he was searched by FBI agents shortly after his meeting with Baharoian. The district court's holding is thus not clearly erroneous.

*Abuse of Trust:*

Finally, McDonough appeals the district court's decision to enhance his sentence under U.S.S.G. § 3B1.3. The sentencing guideline provides that:

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facili-

tated the commission or concealment of the offense, increase by 2 levels. *This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense.* (emphasis added). Section 2E1.1 of the Sentencing Guidelines, the base level offense for RICO violations, provides that:

(a) Base Offense Level (Apply the greater):

(1) 19; OR

(2) The offense level applicable to the underlying racketeering activity.

According to McDonough, because the predicate act of the RICO conviction, bribery, involves an abuse of trust, the enhancement under § 3B1.3 cannot be applied. We acknowledge that when this appeal was filed, this argument had merit as there was a split among the district courts in this Circuit on that issue. *E.g., United States v. Butt,* No. 90–10067, Judgment of Feb. 27, 1991; *United States v. McDonough,* No. 90–10043–k, Judgment of Feb. 21, 1991. However, this Court has recently resolved the dispute in *United States v. Butt,* 955 F.2d 77 (1st Cir.1992).

█ In *Butt,* two police officers were convicted for the same RICO violations as was McDonough; taking bribes from prostitutes in exchange for protection from arrest. Pursuant to U.S.S.G. § 3B1.3 the district court did not enhance defendant Butt's conviction, holding that the underlying offense, bribery, necessarily encompassed an abuse of trust. On appeal, Judge Coffin writing for this Court reversed. We adopt his analysis.

The base offense level prescribed by the guidelines for a particular crime presumably reflects, or "includes," those characteristics considered by Congress to inhere in the crime at issue. In the case of extortion under color of right, abuse of trust would be one such characteristic, since Congress could reasonably have determined that every act of extortion under color of right involves an abuse of public trust. Because the RICO statute, by contrast, can be violated in innumerable ways, there are, arguably, no offense characteristics common to all RICO offenses. We believe it appropriate, therefore, to take the base offense level set forth in § 2E1.1(a)(1) as one finds it—as establishing a generic base offense level for RICO crimes, one that "includes" no particular offense characteristic or special skill. *See United States v. Dempsey,* 768 F.Supp. 1277, 1281 (N.D.Ill.1991) (base offense level in § 2E1.1(a)(1) reflects legislative judgment "that RICO is a specific, identifiable crime apart from any underlying predicates").

The reference to specific "underlying racketeering activity" in subsection (a)(2) does not require a contrary reading. Subsection (a)(1), as we understand it, establishes a minimum base offense level (nineteen) for RICO violations. This minimum reflects a legislative judgment that RICO violations—because entailing not one criminal act, but a pattern of predicate crimes—warrant a higher base offense level than do non-racketeering offenses. *See Dempsey,* 768 F.Supp. at 1281. ("[I]t is both logical and correct that the Sentencing Commission chose a specific offense level for RICO which punishes such activity more harshly than … nonrepetitive criminal conduct.") The comparison between subsections (a)(1) and (a)(2) mandated by § 2E1.1 merely ensures that a RICO defendant will not receive a *lesser* sentence than would attach to the underlying acts, simply by virtue of his having committed them in furtherance of a racketeering scheme.

Properly understood as a universal base offense level for RICO violations, implying no specific offense characteristics, subsection (a)(1) cannot be read to "include" abuse of trust. It, therefore, does not fall within the limitation of § 3B1.31, and applying the abuse of trust adjustment to the subsection (a)(1) calculation produces no double counting. *See Dempsey, id.* at 1283.

*Id.* at 89. Therefore, the two level enhancement, as applied to McDonough's base offense level, is warranted.

.

The conviction stands and the judgment of the district court is *affirmed.*