**UNITED STATES of America,**

v.

**Casey Andrew CRAWFORD, Defendant.**

**Crim. No. 91–137–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 18, 1993.

Alan M. Salsbury, Asst. U.S. Atty., Norfolk, VA, for U.S.

H. Kowalchick, Norfolk, VA, for Casey A. Crawford.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

On October 5, 1992, a jury convicted Casey Andrew Crawford of unauthorized reentry into the United States by a previously deported alien in violation of 8 U.S.C. § 1326(a). Sentencing was set for December 14, 1992. The sentencing hearing began on that date but was continued until March 9, 1993 to allow briefing primarily on the following issues: (1) whether 8 U.S.C. § 1326(b), which establishes greater maximum sentences for certain aliens "described in" § 1326(a), is a sentence enhancement provision for persons convicted under § 1326(a) or whether § 1326(b) defines a separate offense, the elements of which must be alleged in the indictment and proven at trial; and (2) whether the calculation of Crawford's base offense level and criminal history category in the Pre–Sentence Report ("PSR") was based on rnproper "double counting."

For the reasons set forth below, the court concludes that § 1326(b) is sentence enhancement provision and that the challenged calculations in the PSR are correct.

## STATEMENT OF FACTS

Crawford, a native of Jamaica, originally entered this country as an immigrant on July 2, 1980. Based on numerous misdemeanor offenses, Crawford was ordered deported after a deportation hearing held on March 27, 1989. Although Crawford was notified of the hearing date and was represented by counsel at the hearing, Crawford did not attend. Following entry of the deportation order, the Immigration and Naturalization Service ("INS") did not locate Crawford until he was arrested by police in Portsmouth, Virginia on August 20, 1990 for a misdemeanor narcotics violation. In September 1990, the Portsmouth authorities turned Crawford over to the INS.

While the INS was preparing to deport Crawford, authorities in Southhampton County, Virginia, notified the INS that Crawford was wanted there under an outstanding felony warrant for possession of cocaine with the intent to distribute. Pursuant to INS policy, the INS turned Crawford over to the local authorities upon their request. On November 15, 1990, Crawford was convicted in state court of possession with intent to distribute cocaine, an aggravated felony. Crawford was sentenced to ten years imprisonment. Four years of that sentence were suspended, and the state court ordered that Crawford be placed on four years supervised probation upon his release.

Although the INS filed a detainer so that Crawford could be deported following his release from prison, Crawford was paroled by local authorities to the Newport News pre-release program on December 6, 1991. Two days later, however, Crawford fled. On January 10, 1992, INS agents arrested Crawford in Portsmouth, Virginia and deported him almost two weeks later on January 23, 1992.

On April 1, 1992, Crawford reentered the United States. Crawford was arrested on July 23, 1992, and charged in a one count indictment with reentering the United States without authorization after having been arrested and deported, in violation of 8 U.S.C. § 1326. Upon instructions requested by the government and agreed to by the defendant, the jury was told that the government must prove beyond a reasonable doubt:

> First, ... that the defendant was an alien at the time alleged in the indictment; second, that the defendant previously had been arrested and deported from the United States; third, ... that thereafter the defendant unlawfully entered or was found unlawfully present in the United States; and fourth, that the defendant had not received the consent of the Attorney General of the United States to apply for readmission to the United States since the time of the defendant's previous deportation.

The jury returned a verdict of guilty and sentencing was set for December 14, 1992.

The PSR prepared for Crawford's sentencing recommended an offense level of 24, consisting of a base offense level of 8 and a 16 point enhancement for deportation after conviction for an aggravated felony. *See* § 2L1.2(b)(2) of the United States Sentenc-

ing Guidelines ("U.S.S.G." or "Guidelines"). The aggravated felony that provided the basis for the enhancement under U.S.S.G. § 2L1.2(b)(2) was Crawford's state conviction in November 1990 for possession of cocaine with the intent to distribute. Two points were deducted for acceptance of responsibility; resulting in an adjusted base offense level of 22. The PSR also recommended a criminal history category of V based on 12 criminal history points. These calculations yielded a sentencing range of 77–96 months.

Like the Guidelines ranges, the statutory maximum sentences under 8 U.S.C. § 1326 are increased for individuals whose underlying deportation occurred subsequent to a felony conviction. Thus, an individual without a felony conviction who unlawfully reenters the country following arrest and deportation is subject to a maximum prison term of 2 years; see 8 U.S.C. § 1326(a), whereas individuals deported subsequent to a conviction for a felony or an aggravated felony who so reenter the country face maximum prison terms of 5 and 15 years, respectively. See 8 U.S.C. § 1326(b)(1) and (b)(2).

In the present case, the government neither alleged in the indictment nor proved at trial that Crawford had an aggravated felony conviction before his deportation. As a result, the maximum length of Crawford's incarceration turns on whether 8 U.S.C. § 1326(b)(2) provides a sentence enhancement or defines a separate offense. If the statute defines a separate offense, Crawford can be sentenced at most to 2 years imprisonment.

At the December 14 hearing, the court raised and requested briefs on this issue. In addition, Crawford contended, among other things, that the Probation Office engaged in impermissible "double counting" in calculat-

ing his recommended sentence. The court continued the sentencing until March 9, 1993 to allow the parties to submit briefs on these issues.[1]

## DISCUSSION

### I. Sentence Enhancement or Element of the Offense.

■ To determine whether a statute is a sentence enhancement provision or defines a separate offense that must be alleged in the indictment and proved at trial, a court must examine the language, the structure, and the legislative history of the statute. See, e.g., United States v. Blannon, 836 F.2d 843, 844–45 (4th Cir.) (examining those factors in holding that Armed Career Criminal Act of 1984 created only a sentence enhancement, not a new offense), cert. denied, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). Because there is no legislative history on this aspect of 8 U.S.C. § 1326(b)(2), the court's analysis must focus on the language and structure of 8 U.S.C. § 1326. The court also can consider the title of the statute as an aid in clarifying ambiguity and in discerning the intent of the legislature. See 2A Sutherland Statutory Construction § 47.03 (5th ed. 1992).

Before amendment in 1988, 8 U.S.C. § 1326 provided in relevant part:

### § 1326. Reentry of deported alien

Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless ... the Attorney General has expressly consented to such alien's reapplying for admission; or ... unless such alien shall establish that he was not re-

---

1. At the December 14 hearing, Crawford also contended that neither 8 U.S.C. § 1326(b)(2) nor U.S.S.G. § 2L1.2(b)(2) applied to him because his conviction for an aggravated felony was not the reason for his prior deportation, although the deportation occurred after that conviction. However, in his brief submitted for the March 9 hearing, Crawford conceded that neither the statute nor the guideline requires that the aggravated felony conviction be the basis of the previous deportation. See, e.g., United States v. Adeleke, 968 F.2d 1159, 1160 (11th Cir.1992) (discussing

U.S.S.G. § 2L1.2(b)); United States v. Pena–Espinal, 1992 WL 168231, *3 (S.D.N.Y. June 26, 1992) (discussing 8 U.S.C. § 1326(b)).

Crawford also argued in his brief that his state conviction for possession of cocaine with intent to distribute should not be treated as an aggravated felony. Crawford abandoned this claim at oral argument at the March 9 hearing, correctly conceding that his offense of conviction in state court was an aggravated felony within the meaning of the statute. See 8 U.S.C. § 1101(43).

quired to obtain such advance consent . . .

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

8 U.S.C. § 1326 (1970 Bound Volume).

The statute was amended in 1988 (Pub.L. 100–690, Title VII, § 7345(a), 102 Stat. 4471) and again in 1990 (Pub.L. 101–649, Title V, § 543(b)(3), 104 Stat. 5059) [2], and now provides in pertinent part:

**§ 1326. Reentry of deported alien; criminal penalties for reentry of certain deported aliens**

(a) *Subject to subsection (b) of this section,* any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless . . . the Attorney General has expressly consented to such alien's reapplying for admission; or . . . unless such alien shall establish that he was not required to obtain such advance consent . . .

shall be fined under Title 18, or imprisoned not more than two years, or both.

(b) *Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—*

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than five years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

8 U.S.C. § 1326 (Cum.Supp.1992) (emphasis added).

The crux of the present dispute concerns the purpose and effect of the recently added subsection (b). By its terms, subsection (b), specifically § 1326(b)(2), applies "in the case of any alien described in . . . subsection [a]" and "[n]otwithstanding subsection (a)." The court notes that subsection (a) defines the offense of unlawful reentry into the United States by a previously deported alien. *See* 8 U.S.C. § 1326(a). Subsection (b) contains no language defining the offense to which its punishment provisions relate. Rather, it relates back to and incorporates subsection (a) for that purpose. Thus, subsection (b) is dependent on subsection (a) because subsection (b) applies only to "any alien described in subsection (a)", *i.e.,* to any alien who has committed the offense of reentering the United States without authorization following a previous deportation. This suggests that subsection (b) does not define an independent offense, but merely provides for sentence enhancement for certain aliens "described in subsection (a)." Further, because subsection (b) incorporates the definition of the underlying offense contained in subsection (a), the phrase "notwithstanding subsection (a)" refers logically and grammatically only to the two year penalty established by subsection (a) for aliens whose previous deportations were not "subsequent to" a conviction for a felony or an aggravated felony.

The plain language of the statute also makes subsection (a) "[s]ubject to" subsection (b). Because Congress defined an independent "offense" in subsection (a), it would be illogical to conclude that Congress made application of that offense dependent on proof of an additional element in another subsection of the statute. Accordingly, the effect of the phrases "subject to subsection (b)" and "[n]otwithstanding subsection (a)" is to make the sentence component of subsection (a), not the underlying offense created therein, "[s]ubject to" subsection (b)'s enhanced sentencing provisions for certain deported aliens whose deportations occurred "subsequent to" a conviction for a felony or an aggravated felony.

█ Given this textual interplay, the court interprets the statutory language and structure of § 1326 to mean that subsection (a) defines the underlying offense and also sets

---

**2.** The 1990 amendment substituted provisions referring to Title 18 to determine the fine amount.

the maximum sentence for all offenders whose sentences are not governed by subsections (b)(1) or (b)(2). Subsection (b) establishes enhanced penalties for aliens who commit the offense defined in subsection (a), but whose deportations occurred after a conviction for a felony or aggravated felony.

Another possible interpretation of the statute, of course, is that subsection (b) incorporates the offense defined in subsection (a) and simply adds another element—conviction of a felony or an aggravated felony prior to deportation—to create separate substantive offenses. That interpretation, however, is not consistent with the language and structure of the statute which, as discussed above, defines in subsection (a) the offense to which the enhanced sentences of subsection (b) apply. Moreover, the changes to the title of amended § 1326 clarify any ambiguity and reinforce the conclusion that subsection (b), specifically § 1326(b)(2), establishes only a sentence enhancement provision.

Before the 1988 amendment, the statute was entitled "Reentry of deported alien." However, in 1988, Congress amended the body of the statute by adding subsection (b) and, to reflect this substantive change, also amended the title of the statute to read: "Reentry of deported alien; *criminal penalties* for reentry of *certain* deported aliens." (emphasis added). This change in title indicates that, by amending § 1326, Congress intended to create enhanced penalties for "certain" aliens who committed the underlying offense of unlawfully reentering the United States after having previously been deported, not to create a separate substantive offense for "certain deported aliens."

The court acknowledges that this interpretation is at odds with that adopted by the United States Court of Appeals for the Ninth Circuit. In a series of cases, that court has held that § 1326(b)(1) and (b)(2) are separate substantive offenses, not sentence enhancement provisions. *See, e.g., United States v. Campos–Martinez,* 976 F.2d 589 (9th Cir. 1992); *United States v. Gonzalez–Medina,* 976 F.2d 570 (9th Cir.1992); *United States v. Arias–Granados,* 941 F.2d 996 (9th Cir.1991) (dictum).

Except for the *Campos–Martinez* court, the Ninth Circuit's interpretation of § 1326 has been largely conclusory. Moreover, the court in *Campos–Martinez* did not engage in a textual analysis of § 1326; instead, it relied almost exclusively on its precedent interpreting 8 U.S.C. § 1325, which the court deemed to be an analogous statute, to control its interpretation of § 1326. 976 F.2d at 591–92. Section 1325, entitled "Improper entry by an alien," provides in relevant part:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of *any such offense,* be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of *any such offense,* be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1325(a) (Cum.Supp.1992) (emphasis added). In *Campos–Martinez,* the Ninth Circuit explained that it previously had interpreted § 1325(a) to mean that "a previous conviction for illegal entry is an element of the felony offense under section 1325." *Campos–Martinez,* 976 F.2d at 591 (citations omitted). Finding § 1325 and § 1326 to be analogous statutes, the *Campos–Martinez* court concluded that § 1326(b)(1) and (b)(2) must also be separate offenses requiring proof of a previous conviction.

This court respectfully disagrees with the predicate on which *Campos–Martinez* is based, namely, that the increased sentence for recidivists provided by § 1325(a) is part of a separate offense requiring proof of a previous conviction under § 1325(a). The plain language of § 1325(a) defines the underlying "offense" in the statute to be improper entry into the United States based on the manner of entry, not on the mere fact of entry. Indeed, both the "recidivist" felony penalty provision of § 1325(a) and the penalty provision for the initial violation expressly refer to "any such offense." Furthermore,

the language and structure of § 1325(a) is similar to that of other statutes that have been construed as sentence enhancers. *See, e.g., Garrett v. United States,* 471 U.S. 773, 781–82, 105 S.Ct. 2407, 2412–13, 85 L.Ed.2d 764 (1985) (construing provision of 21 U.S.C. § 848(a), which mandates enhanced penalties for those with "prior convictions ... under this section", to be a sentence enhancement, not a separate offense); *United States v. Jackson,* 824 F.2d 21, 24 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1013, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988) (same).

Under these circumstances, this court would conclude, were it called upon to do so, that the language in § 1325(a) that formed the basis for the decision in *Campos–Martinez* is a sentence enhancement provision for repeat offenders, not a separate offense. For this reason, and because the *Campos–Martinez* court did not analyze fully the text of § 1326, this court considers *Campos–Martinez* and the related Ninth Circuit authority cited by Crawford to be unpersuasive.[3]

## II. *Double Counting.*

In calculating the applicable sentencing range under the Guidelines, the PSR used Crawford's aggravated felony conviction to enhance the base offense level 16 points under U.S.S.G. § 2L1.2(b)(2) because Crawford's previous deportation was "after a conviction for an aggravated felony." The same aggravated felony conviction, and the sentence related thereto, also formed the basis of 6 of the 12 criminal history points assessed against Crawford. Specifically, Crawford was assessed 3 points under U.S.S.G. § 4A1.1(a), 2 points under U.S.S.G. § 4A1.1(d), and 1 point under U.S.S.G. § 4A1.1(e).

■ Crawford argues that, by using his aggravated felony conviction to calculate his base offense level and to assess criminal history points, the PSR was based on impermissible "double counting." Crawford further contends that, even if double counting is permissible under some circumstances, it was

not permissible to allow the conviction to be counted three times in calculating criminal history. Crawford's objections are not well founded.

■ Counting a factor twice in calculating a defendant's sentence is proper "if the Sentencing Commission intended the result, and if the result is permissible because 'each [use of the factor] concerns conceptually separate notions relating to sentencing.'" *United States v. Adeleke,* 968 F.2d 1159, 1161 (11th Cir.1992). In cases involving prosecutions under 8 U.S.C. § 1326, the Sentencing Commission clearly intended that aggravated felonies be counted both in calculating a defendant's base offense level and criminal history category. *See* U.S.S.G. § 2L1.2, comment. (n. 5) ("An adjustment under subsection (b)(1) or (b)(2) for a prior felony conviction applies in addition to any criminal history points added for such conviction....").

Moreover, double counting a factor to determine base offense level and criminal history is entirely permissible because each use of the state conviction and sentence relates to a different element of the sentencing equation. "The offense level represents a judgment as to the wrongfulness of the particular act" while "[t]he criminal history category principally estimates the likelihood of recidivism." *United States v. Campbell,* 967 F.2d 20, 24 (2d Cir.1992) (upholding double counting between § 2L1.2 and § 4A1.3). Accordingly, using Crawford's prior aggravated felony to enhance his offense level under § 2L1.2(b)(2) and to award criminal history points is not improper. *See, e.g., Adeleke,* 968 F.2d at 1161 (upholding double counting between U.S.S.G. § 2L1.2 and criminal history); *Campbell,* 967 F.2d at 24–25.

■ Crawford's argument that the probation officer engaged in impermissible "triple counting" in calculating his criminal history category is similarly unavailing. The criminal history calculation entails assessing points for a defendant's past criminal behavior. The number of points assessed turns on

---

**3.** Even if the court were to agree that § 1325(a) required proof at trial of a previous statutory violation before the enhanced felony penalty could apply, it nonetheless would conclude that

the language and structure of § 1326 are sufficiently distinct from that of § 1325 to warrant a different result.

the type of past criminal conduct as well as its temporal relationship to the defendant's current offense of conviction. *See* U.S.S.G. § 4A1.1. Indeed, under the Guidelines scheme, one instance of prior criminal conduct often will serve as the basis for assessing criminal history points under more than one subsection of § 4A1.1.

Here, for example, Crawford received 3 criminal history points under § 4A1.1(a) because his sentence for the aggravated felony conviction was of a certain type, *i.e.*, it "exceed[ed] one year and one day." The other criminal history points based on the aggravated felony conviction and resulting sentence were assessed because of the temporal proximity of that conviction and sentence to the instant offense of conviction.

Crawford was assessed 2 additional points under § 4A1.1(d), which provides for such an assessment "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." This assessment was appropriate because, at the time of Crawford's illegal reentry into this country, he was on probation for the aggravated felony offense.

Finally, Crawford received 1 point under § 4A1.1(e), which provides that "2 points [be added] if the defendant committed the instant offense less than two years after release from imprisonment under a sentence counted under [§ 4A1.1](a)" but states that "if 2 points are added under [§ 4A1.1](d), . . . only 1 point" should be added. This 1 point assessment was proper because Crawford's illegal reentry into the United States occurred within 2 years of his aggravated felony conviction and because Crawford already had received 2 points under subsection (d).

As this discussion of the relevant provisions of the Sentencing Guidelines makes clear, the answer to Crawford's "triple counting" argument is that the Guidelines' scheme for calculating criminal history, which Crawford does not attack, specifically provides for such calculations based on a single event of past criminal conduct. The court further observes that the aggravated felony conviction was counted because of its type and its temporal relationship to the underlying offense of conviction, two separate considerations in the criminal history calculus. Moreover, to avoid impermissible overlap, § 4A1.1(e) provides for only 1 criminal history point if 2 points were awarded under § 4A1.1(d). For these reasons, the court concludes that the criminal history calculation in the PSR was proper.

## CONCLUSION

Based on the foregoing, the court holds that 8 U.S.C. § 1326(b)(1) and (b)(2) are sentencing enhancement provisions, not separate offenses. The court also holds that Crawford's state court conviction for possession of cocaine with intent to distribute was used properly to calculate Crawford's offense level and criminal history under the Sentencing Guidelines.

It is so ORDERED.