UNITED STATES of America,
Petitioner, Appellee,

v.

Robert FORBES, Defendant, Appellant.

No. 93–1371.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1993.

Decided Feb. 25, 1994.

**1295**

C. Sidney Lester with whom Lester, Hubbert & Gill, P.C. was on brief for appellant.

Edwin O. Vazquez, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jose A. Quiles–Espinosa, Senior Litigation Counsel, were on brief for appellee.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

COFFIN, Senior Circuit Judge.

Robert George Forbes appeals his conviction and sentence for illegal reentry into the United States after deportation, 8 U.S.C. § 1326. We affirm.

## I. *Factual Background*

In August 1992, Robert George Forbes, a Jamaican citizen, was deported from New York to Jamaica. The following month, Forbes attempted to reenter the United States with a false passport that had been altered to include his picture. A federal grand jury in the District of Puerto Rico subsequently returned a two count indictment against Forbes, charging him with unlawfully using an altered passport, in violation of 18 U.S.C. § 1543, and with unlawfully attempting to reenter the United States after having previously been arrested and deported, in violation of 8 U.S.C. § 1326.[1]

On December 16, 1992, Forbes entered into a plea agreement, in which he pled

---

1. The indictment reads as follows:

**Count One**

On or about September 20, 1992, in the District of Puerto Rico, and within the jurisdiction of this Court,

**Robert George Forbes**
**also known as**
**Julian David Brynteson**

the defendant herein, while applying for admission into the United States of America, willfully, knowingly, and unlawfully, did use an altered passport, to wit: United Kingdom passport number 003856139 in the name of JULIAN DAVID BRYNTESON which passport had been altered by removing the photograph of the owner and replacing it with one of the defendant. All in violation of Title 18, United States Code, Section 1543.

**Count Two**

On or about September 20, 1992, in the district of Puerto Rico and within the jurisdiction of this Court,

**Robert George Forbes**
**also known as**
**Julian David Brynteson**

the defendant herein, being an alien previously arrested and deported from the United States, that is, on or about August 18, 1992, to Jamaica, willfully, knowingly, and unlawfully did attempt to reenter the United States from a place outside of the United States without having obtained, prior to his reembarkation, the express consent and permission from the Attorney General of the United Stat[e]s. All in violation of Title 8, United States Code, Section 1326.

guilty only to the charge of unlawfully entering the United States, in violation of 8 U.S.C. § 1326. As part of his plea, Forbes waived his right to appeal "any legal sentence imposed by the Court under the Sentencing Guidelines as a result of this Plea Agreement."

Forbes' presentence report (PSR) computed his total offense level at 21: 8 points were assigned as the base offense level for convictions under 8 U.S.C. § 1326, 16 points were added for his previous deportation after a conviction for an aggravated felony, and 3 points were subtracted for acceptance of responsibility and timely notifying authorities of his intention to plead guilty. *See* U.S.S.G. §§ 2L1.2(a), (b)(2); 3E1.1(b)(2). The PSR also recommended a criminal history category of III, based on 4 criminal history points. *See* U.S.S.G. § 5, Part A.

At a sentencing hearing held on March 12, 1993, the district court adopted the recommendations of the PSR, and determined the corresponding sentencing guidelines range to be 46–57 months. Based on evidence of Forbes' cooperation with the government in other cases, and his continued willingness to cooperate in the future, the sentencing judge departed downward from the applicable guideline range, and imposed a sentence of 36 months plus three years of supervised release. This appeal followed.

Forbes argues that the waiver of his right to appeal is ineffective, because it was not knowingly and voluntarily made; and that, even were the waiver effective, he still has a right to appeal his sentence, because the court erred in applying the Sentencing Guidelines to compute his sentence. He also claims that the government's failure to allege in his indictment the aggravated felony used to enhance his sentence under 8 U.S.C. § 1326(b)(2) renders the indictment sufficient only to charge him with a violation of 8 U.S.C. § 1326(a). Forbes' final claim is that the use of a prior felony conviction to enhance his sentence under § 1326 violates the *ex post facto* clause of the Constitution.

## II. *The Waiver Provision*

By its terms, the waiver provision in Forbes' plea agreement is narrow, covering only the right to appeal any *legal* sentence imposed under the Sentencing Guidelines. We need not reach the question of whether his waiver was knowing and voluntary, nor whether Forbes' claims lie beyond the scope of this waiver, because his appeal suffers from a more fundamental defect. Because he failed to raise any of these claimed errors before the district court, with the exception of his challenge to the sufficiency of the indictment, *see infra* at 1296–1300, we cannot correct them absent a showing of plain error, *United States v. Carrozza,* 4 F.3d 70, 86–87 (1st Cir.1993). As we discuss below, Forbes has failed to make such a showing here.

## III. *Forbes' Section 1326 Claim*

Forbes pled guilty to one count of unlawful reentry following deportation, in violation of 8 U.S.C. § 1326, the full text of which is set forth in the margin.[2] Subsection (b) of this provision was added by Congress as part of the Anti–Drug Abuse Act of 1988, *see* Pub.L. 100–690, Title VII, § 7345(a), 102 Stat. 4471

---

**2.** This statute provides:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

(codified as amended at 8 U.S.C. § 1326(b) (1988)). Forbes' indictment alleged only unlawful reentry following deportation, and did not include any reference to his prior aggravated felony conviction. Forbes claims that the government's failure to allege the prior aggravated felony that permitted it to sentence him within the limits set forth under subsection (b)(2) renders the indictment sufficient only to charge a violation of § 1326(a), and requires that his sentence be contained within the statutory maximum set forth by that subsection. If, as Forbes contends, § 1326(a) and § 1326(b) describe separate and distinct offenses, his sentence cannot stand, because he cannot be sentenced and convicted under a statutory provision under which he has not been indicted. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. McDonough*, 959 F.2d 1137, 1140–41 (1st Cir.1992).

The government replies that Forbes' failure to present this issue before the district court bars this court from considering it on appeal. It claims, further, that § 1326 describes only a single offense, and that subsection (b) is a sentence enhancement provision, which permits the court to increase the penalties for a violation depending on the defendant's criminal record.

 Forbes' failure to point out perceived defects in the indictment does not preclude our consideration of this argument on appeal. Under Federal Rule of Criminal Procedure 12(b)(2), an objection that an indictment fails to state an essential element of an offense "shall be noticed by the court at any time during the pendency of the proceedings." This objection may be raised by a defendant for the first time on appeal, *United States v. Seuss*, 474 F.2d 385, 387 n. 2 (1st Cir.1973), or by an appeals court *sua sponte*, *see United States v. Saade*, 652 F.2d 1126, 1133 (1st Cir.1981) (citing cases). When such an objection is urged for the first time on

appeal, courts have required that indictments be construed liberally, finding an indictment to be sufficient unless there is no reasonable construction by which it could charge an offense for which the defendant was convicted. *See, e.g., United States v. Wilson*, 884 F.2d 174, 179–181 (5th Cir.1989). While statutory citation, standing alone, cannot substitute for setting forth the elements of a crime, it may reinforce other references in the indictment so as to render it valid. *United States v. McLennan*, 672 F.2d 239, 243–44 (1st Cir.1982).

Forbes' indictment follows the language of 8 U.S.C. § 1326(a). It makes no reference to the fact that Forbes was deported subsequent to a conviction for an aggravated felony. If, as Forbes maintains, an aggravated felony conviction is an element of a § 1326(b) offense, his indictment is insufficient, because it fails to set out an essential element of an offense under that section.

Whether § 1326(a) and § 1326(b) describe separate criminal offenses, with different elements and maximum penalties, or a single offense, allowing sentence enhancement based on a defendant's criminal history, is an issue of first impression in this court.[3] The District Court for the District of Rhode Island, the only court within our circuit to address this issue, recently held that § 1326(a) and § 1326(b) set forth separate and distinct offenses, with different elements and maximum penalties. *United States v. Vieira–Candelario*, 811 F.Supp. 762, 768 (D.R.I.1993). The Fifth and the Ninth Circuits, both of which have tackled this issue in the past two years, have come to opposite conclusions. *See United States v. Campos–Martinez*, 976 F.2d 589 (9th Cir.1992) (sections 1326(a) and (b) state separate crimes); *United States v. Gonzalez–Medina*, 976 F.2d 570 (9th Cir.1992) (same)[4]; *United States v. Vasquez–Olvera*, 999 F.2d 943 (5th Cir.1993) (section 1326(b) is a sentence enhancement

---

3. We have, however, noted the issue. *See United States v. Zapata*, 1 F.3d 46, 50 n. 5 (1st Cir.1993) (*citing United States v. Vieira–Candelario*, 811 F.Supp. 762, 768 (D.R.I.1993)).

4. The Ninth Circuit decisions gave no rationale for their conclusion that these provisions described separate offenses, with different elements

and maximum sentences, other than to say that this statute was similar to 8 U.S.C. § 1325, which counted a prior conviction for illegal entry as an element of the felony offense under that section. *See Campos–Martinez*, 976 F.2d at 591–92; *Gonzalez–Medina*, 976 F.2d at 572–73.

provision) [5]; *see also United States v. Crawford*, 815 F.Supp. 920 (E.D.Va.1993) (same).

In determining whether a statute is a sentence enhancement provision or a separate criminal offense, we look at its language, structure, and legislative history. *See, e.g., United States v. Rumney*, 867 F.2d 714, 717–18 (1st Cir.1989) (examining these factors in holding that provision of the Armed Career Criminal Act of 1984 was a sentence enhancer, and not a separate offense). We have noted that particular structural features, such as a penalty that is a multiplier of the sentence for the underlying crime, or a title denoting it as a sentence enhancement provision, may indicate that a statutory provision is a sentence enhancer, but we have not treated these features as conclusive. *See id.* at 718–19. Our analysis begins with the statute's language and structure.

In our view, the language and structure are unhelpful, because the provisions are subject to two plausible readings. The first was adopted by the Fifth Circuit and used to support its conclusion that subsection (b) is a sentence enhancement provision. *Vasquez–Olvera*, 999 F.2d at 946. That court noted that, in drafting the introductory language of subsections (a) and (b), Congress intertwined the two provisions: the introductory language of subsection (a) states "subject to subsection (b) of this section," and the introductory language of subsection (b) states, "Notwithstanding subsection (a) of this section." The Fifth Circuit found that it would be "highly unlikely that Congress would structure the statute in such a way that subsection (b) is dependent on elements of subsection (a), if it intended for subsection (b) to be a separate criminal offense." *Id.; accord Crawford*, 815 F.Supp. at 923.

We believe it just as likely, however, that subsection (b) incorporates the offense described in subsection (a), and simply adds the additional element regarding a prior conviction of a felony or aggravated felony. *Vasquez–Olvera*, 999 F.2d at 948 (King, J. dissenting); *see also Vieira–Candelario*, 811

F.Supp. at 767 (finding the statute's plain language ambiguous). The fact that each subsection makes reference to the other is simply the logical way of indicating the relationship between the arguably two separate crimes.

Nor does the title of the statute offer sufficient guidance about whether subsection (b) is a sentence enhancer or a separate element of the crime. Before 1988, the statute was entitled "Reentry of deported alien." In 1988, the statute was amended to add subsection (b), and to change the title to "Reentry of deported alien; criminal penalties for reentry of certain deported aliens." One court has argued that this change in the title indicates that in amending § 1326, Congress intended to create enhanced penalties for *certain* aliens who committed the underlying offense of unlawfully reentering the United States following deportation. *Crawford*, 815 F.Supp. at 924; *see also United States v. Vasquez–Olvera*, 999 F.2d at 945. While this argument has some force, we think that a competing interpretation is equally permissible. The bifurcated structure of § 1326 and the apparent incorporation of the elements of subsection (a) into subsection (b) might also suggest that Congress intended the broad title of the offense ("reentry of deported alien") to apply to both separate offenses in the different subsections. *Vasquez–Olvera*, 999 F.2d at 949 (King, J., dissenting). Finally, we have not found any legislative history discussing this particular aspect of 8 U.S.C. § 1326(b)(2).

Lacking insight from the language, structure and legislative history we are compelled to take a broader look at the factors implicated by a decision to classify a provision either as a sentence enhancer or a separate crime. In so doing, we have found guidance in a previous decision of this court addressing a similar issue. In *United States v. Rumney*, 867 F.2d 714 (1st Cir.1989), we were asked to determine whether the Armed Career Criminal Act, 18 U.S.C. § 1202(a) (Supp.1984)

---

**5.** Judge King wrote a dissenting opinion in which she adopted the Ninth Circuit's analysis in

*Campos–Martinez* and the District of Rhode Is-

(ACCA) [6], was a sentence enhancer or a separate substantive crime. Section 1202(a) penalized receipt, possession, or transportation of firearms by those with prior felony convictions. The ACCA amended this statute to increase the minimum penalty for a person who "receives, possesses, or transports in commerce ... any firearm and who has three previous felony convictions." 18 U.S.C. § 1202(a) (Supp.1984). Rumney, like Forbes, challenged his sentence under the higher maximum, arguing that the government's failure to allege three prior convictions in the indictment rendered the indictment insufficient to charge a violation of the ACCA. 867 F.2d at 717.

We resolved the question in *Rumney* primarily based on legislative history, which demonstrated Congress' intent that the ACCA be a sentence enhancer, and not a separate statutory element. We also observed, however, that the special nature of the disputed prior crimes provision further supported its classification as a sentence enhancer. *Rumney*, 867 F.2d 714, 718–19; *see also United States v. Jackson*, 824 F.2d 21, 25–26 (D.C.Cir.1987).

■ We felt it significant that if the disputed provision were deemed a separate element, the government would be required to place evidence of the defendant's prior felony convictions before the jury. The introduction of prior crimes evidence is highly prejudicial, and should not be permitted lightly, *Rumney*, 867 F.2d at 719; *see also Jackson*, 824 F.2d at 25 (noting strong Congressional policy of avoiding introduction of this type of potentially prejudicial evidence in criminal trials). Thus, strong policy reasons for keeping information about prior crimes from the jury counselled in favor of our determination

that the ACCA was a sentence enhancer, an issue to be decided by the judge.

■ In addition, under traditional sentencing procedures, proof of a defendant's prior felony convictions typically is the type of individual background information considered by the judge, and not the jury, *see Gov't of Virgin Islands v. Castillo*, 550 F.2d 850, 853 n. 5 (3rd Cir.1977); *see also id.* at 854 (noting that additional language in statutory provision that increased penalty for conduct which was already a crime was in the nature of a sentencing statute rather than a substantive offense statute). *Compare United States v. Michael*, 10 F.3d 838, 842 (D.C.Cir. 1993) (concluding that statutory amendment singling out possession of cocaine base for especially harsh penalties was a separate element, and not a sentence enhancer, based, in part, on observation that unlike consideration of prior crimes, whose admission before the jury was highly prejudicial, the determination of the character of the drug was an aspect of the events associated with the crime itself, and a fact that juries typically resolve). And, as we noted in *Rumney*, "the primary rationale for requiring sentencing factors to be submitted to a jury—the necessity for accurate factfinding—does not apply in the instant case. Prior convictions are highly verifiable matters of record which need not be subject to jury inquiry. Because defendants had received the totality of constitutional protections due in the prior proceedings, no additional factfinding is necessary." 867 F.2d at 719 (quoting *United States v. Brewer*, 853 F.2d 1319, 1326 (6th Cir.1988)). [7]

■ This reasoning similarly applies here. If we find that § 1326(b) is a separate element, a defendant's past felony conviction

---

land's analysis in *Vieira–Candelario*, 999 F.2d at 947–950.

6. The statute has since been recodified into two separate provisions. The first sentence of the former § 1202(a), describing the unlawful conduct, now appears at 18 U.S.C. § 922(g), while the ACCA provision has been incorporated into the other penalty provisions of 18 U.S.C. § 924(e).

7. As the Fifth Circuit has explained in the context of a similar recidivist statute, prior convic-

tions "have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done but rather what the state has *previously* determined that he has done. And that previous determination must have been a formal, *judicial* determination of *guilt*; and hence one as to which the full measure of constitutional protections was available." *Buckley v. Butler*, 825 F.2d 895, 903 (5th Cir.1987).

would have to be revealed to the jury.[8] · This information is especially prejudicial where, as here, the underlying crime (unlawful reentry following deportation) might not be viewed by the jury as particularly egregious. In the absence of Congressional direction, we are reluctant to impose that burden on defendants. We realize that the defendant here argues for a determination that § 1326(b) is a separate element. The posture of this particular case makes that position strategically desirable. But the omission of an element from an indictment is an error easily remedied by the government, while the prejudice from the introduction of prior crimes is not so easily neutralized. In the long run, we believe that defendants have more to lose than gain from the interpretation of the provision urged by Forbes on this appeal.

Thus, while we have no direction from the statute itself, policy and precedent persuade us that § 1326(b) should be construed as a sentence enhancement provision. The indictment therefore need not have alleged Forbes' prior aggravated felony conviction to permit his sentencing under § 1326(b).

## IV. *Sentencing Guidelines Claims*

Forbes raises three additional claims of error with regard to the calculation of his sentence. First, he argues that the sentencing court erred in increasing his base offense level by sixteen points under guideline provision 2L1.2(b)(2), based on the finding that Forbes previously was deported after having been convicted for an aggravated felony.

Forbes claims that the offense on which the government relied to support the sixteen point penalty enhancement does not qualify as an aggravated felony. Second, he contends that the application of the aggravated felony enhancement to this conviction violates the *ex post facto* clause of the Constitution. Finally, he argues that a 1986 violation for which he received a conditional discharge sentence should not have been included in the calculation of his criminal history category.

As noted above, Forbes did not raise any of these challenges before the district court, and they consequently are subject to only plain error review. *See* p. 1296 *supra.*

### A. *Aggravated felony determination*

The Sentencing Guidelines relating to offenses under 8 U.S.C. § 1326 are set forth at U.S.S.G. § 2L1.2. This provision sets the base offense level for unlawful entry into the United States at 8, with an increase of 4 levels if the defendant previously was deported after conviction for a felony, or 16 if the defendant previously was deported after conviction for an aggravated felony.[9] Forbes argues that his 1988 conviction under N.Y. Penal Law § 220.09 (McKinney 1989) does not qualify as an aggravated felony. He claims, therefore, that by assigning him 16 points for this conviction, the court overstated his base offense level.

---

**8.** In some cases, this may include evidence of more than one conviction. For example, an aggravated felony within the meaning of 8 U.S.C. § 1326(b)(2) might be made up of more than one criminal act. *See infra* at 1300–1301.

**9.** The offense of conviction, 8 U.S.C. § 1326, and the applicable guidelines, U.S.S.G. § 2L1.2, share a similar structure, but serve different functions. Section 1326 sets forth the elements of the offense and the maximum penalties for convictions under this section. Once a defendant has been convicted, the guidelines operate to determine the appropriate penalty within this range. In this case, the guidelines direct the court to consider specific offense characteristics under § 2L1.2, which include previous deportation following an aggravated felony conviction, in order to determine the applicable guideline sentencing range, *see* U.S.S.G. §§ 1B1.2(b) &

application n. 2; 2L1.2(b)(2). Under the guidelines, courts may consider such information for sentencing purposes even where this conduct was not an element of the offense of conviction. For example, if we were to hold that § 1326(a) and (b) were two separate offenses, and that Forbes could be convicted and sentenced only under § 1326(a), we still could consider his prior aggravated felony conviction in calculating his sentence under 2L1.2. The sentence we could impose however, would have to be within the two year range set forth in § 1326(a). *See United States v. Arias–Granados*, 941 F.2d 996 (9th Cir. 1991) (holding that defendants' prior felony convictions, though not encompassed within a conviction under § 1326(a), could still be considered in computing defendants' sentence under U.S.S.G. § 2L1.2, provided that the sentence imposed did not exceed the two-year statutory maximum under § 1326(a)).

"Aggravated felony" is defined in paragraph 7 of the Application Notes to § 2L1.2 to include "any illicit trafficking in any controlled substance (as defined in 21 U.S.C. 802), including any drug trafficking crime as defined in 18 U.S.C. 924(c)(2) ..." and applies to offenses in violation of federal or state law.

■ A "drug trafficking crime" is defined in 18 U.S.C. § 924(c)(2) to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App.1901 et seq.)." For a drug offense to come within this statute, and, in turn, to meet the definition of "aggravated felony," it must meet two criteria: first, the offense must be punishable under one of these three enumerated statutes; and second, the offense must be a felony. *Amaral v. I.N.S.,* 977 F.2d 33, 35 (1st Cir.1992).

■ Forbes argues that the New York offense, Criminal Possession of a Controlled Substance in the Fourth Degree, does not meet either criterion, and therefore should not be construed as an aggravated felony. His argument fails because it misapprehends the operation of the applicable sentencing guideline.

Possession of drugs is punishable under 21 U.S.C. § 844(a), a part of the Controlled Substances Act. This statute provides, in relevant part:

It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter. Any person who violates this subsection may be sentenced to a

term of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after a prior conviction under this subchapter or subchapter II of this chapter, or a prior conviction for any drug or narcotic offense chargeable under the law of any State has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years, and shall be fined a minimum of $2,500....

A felony is defined under the Controlled Substances Act as "any Federal or State offense classified by applicable Federal or State Law as a felony." 21 U.S.C. § 802(13). Under 18 U.S.C. § 3559(a), an offense is a felony if the maximum term authorized for the offense is "more than one year." The maximum penalty authorized under 21 U.S.C. § 844(a) for simple possession is one year. However, one prior conviction turns simple possession into a felony since the maximum penalty increases to over a year. In this case, Forbes' 1987 conviction for Criminal Possession of Marijuana in the Fifth Degree, in violation of N.Y. Penal Law § 221.10 (McKinney 1989), converts his later conviction under N.Y. Penal Law § 220.09 into a felony.[10] Because Forbes' conviction is a felony punishable by one of the statutes enumerated in 18 U.S.C. § 924(c)(2), it therefore qualifies as an aggravated felony within the meaning of U.S.S.G. § 2L1.2.

### B. *Ex post facto determination*

■ The *ex post facto* provision of the Constitution bars the retrospective application of laws that materially disadvantage the defendant. *See* U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. A central concern of the *ex post facto* prohibition is to assure that legislative acts "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446,

10. Moreover, possession is a felony under the applicable state law. In New York, the maximum imprisonment for Criminal Possession of a Controlled Substance in the Fourth Degree is fifteen years, *see* N.Y. Penal Law §§ 220.09 (McKinney 1989), 70.00 (McKinney 1987), and any criminal offense punishable by more than

one year is a felony, N.Y.Penal Law § 10.00 (McKinney 1987). Thus, under the definition of a felony in 21 U.S.C. § 802(13), Forbes' possession conviction, which is a felony under New York Law, is also a felony under the Controlled Substances Act.

2451, 96 L.Ed.2d 351 (1987) (*quoting Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981)).

Forbes argues that the use of his prior convictions to trigger the aggravated felony enhancement provision of § 1326(b)(2) violates the *ex post facto* provision both because the convictions on which this enhancement was based occurred prior to the effective date of the amendments adding subsection (b)(2), and because he had no fair warning of the possible post-conviction effects of the aggravated felony determination. In support of his claimed lack of "fair warning," Forbes points to his comment to the district judge at his sentencing hearing that he had not been told by the immigration judge that he was being deported "on an aggravated felony."

In *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Supreme Court addressed Forbes' first argument in the context of a state habitual criminal act. In that case, the Court upheld, against an *ex post facto* challenge, a state habitual criminal statute enhancing penalties for crimes on the basis of a defendant's prior criminal convictions, including one which occurred before the enactment of the statute. *Id.* at 732, 68 S.Ct. at 1258–59. *Gryger* thus recognized the legislature's authority to enact an enhanced penalty for future conduct preceded by a criminal conviction obtained prior to enactment of the enhanced penalty provision. *See Covington v. Sullivan,* 823 F.2d 37, 39 (2d Cir.1987).

■■■ Forbes was convicted of a violation of 8 U.S.C. § 1326, which applies to aliens who illegally reenter the United States following deportation. By its terms, the amendment adding subsection (b) applies to any alien who enters or attempts to enter the United States after November 18, 1988 (the date of the Act's enactment). *See* Pub.L. 100–690, Title VII, § 7345(a), 102 Stat. 4471. Forbes violated this statute by attempting to enter the United States illegally on September 20, 1992, and the district court enhanced his punishment based on convictions entered prior to the effective date of the Act.

Forbes cannot claim that subsection (b)(2) "makes more onerous the punishment for crimes committed before its enactment." *Weaver,* 450 U.S. at 36, 101 S.Ct. at 968. Forbes is being punished for the crime of unlawful reentry, in violation of § 1326. The enhancement provision increases the punishment for *this* crime. It does not affect the punishment that Forbes received for the crimes he committed prior to the effective date of the Act. As the *Gryger* Court observed, the fact that prior convictions that factored into a defendant's increased sentence preceded the enactment of an enhancement provision does not render the Act invalidly retroactive. 334 U.S. at 732, 68 S.Ct. at 1258–59. Rather, an enhanced penalty "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.*

Nor does Forbes' claim that he lacked fair warning of the application of the aggravated felony provision to his crime have merit. He may, in fact, have been unaware of this; but fair notice, as the sentencing judge stated, is "what the statute says, not what the immigration officer might tell you." At the time of Forbes' unlawful reentry, § 1326 plainly provided an enhanced sentence based on prior conviction for an aggravated felony.

### C. Conditional discharge sentence

Forbes' final claim is that the district court erred in calculating his criminal history by factoring in one offense level point for a prior conditional discharge sentence that he received for pleading guilty to Unlawful Possession of Marijuana, in violation of N.Y. Penal Law § 221.05 (McKinney 1989). He claims that this disposition was not a criminal conviction, and therefore does not justify a point under U.S.S.G. § 4A1.1(c), which adds one point for each sentence received following criminal conviction.

We need not reach the merits of this claim because it is evident that no plain error occurred. Forbes points out that excluding the challenged violation from his criminal history category would reduce his designated sentencing range from 46–57 months to 41–51 months. The sentence imposed, after the court departed downward, was only 36

months. Because the sentence Forbes received is still below the guidelines range which he advocates as correct, we can find no plain error. *See Carrozza,* 4 F.3d at 87–91.

*The decision of the district court is affirmed.*