**UNITED STATES of America,**

v.

**Aurelio VIEIRA–CANDELARIO.**

**Cr. No. 92–044 P.**

United States District Court,
D. Rhode Island.

Jan. 28, 1993.

Craig Moore, Asst. U.S. Atty., U.S. Attorney's Office, Providence, RI, for plaintiff.

Damon D'Ambrosio, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The sentencing of Defendant Aurelio Vieira–Candelario raises a significant legal question of first impression in the First Circuit: whether 8 U.S.C. § 1326(a) and § 1326(b) set forth separate and distinct offenses or a single offense with different penalties depending on the defendant's criminal record?

Section 1326(a) makes it an offense punishable by not more than two years in prison for any alien who has been previously arrested and deported thereafter to "enter," "attempt to enter" or be "found in" the United States without the consent of the Attorney General. Section 1326(b) provides for imprisonment "in the case of any alien described in [subsection (a)]" (1) for not more than five years for those whose deportation was subsequent to a conviction

for the commission of a felony and (2) for up to fifteen years for those whose deportation was subsequent to a conviction for the commission of an aggravated felony.[1]

Defendant was charged with unlawful reentry following deportation in violation of § 1326 and pleaded guilty under an agreement with the United States. Applying the U.S. Sentencing Guidelines effective November 1, 1991, the Pre–Sentence Report calculated a sentencing range of between sixty-three (63) and seventy-eight (78) months. At sentencing, defendant objected to the Probation Officer's sentencing calculation on *ex post facto* grounds and as exceeding the two-year statutory maximum under § 1326(a).[2]

### I

The salient facts are not in dispute. According to the Pre–Sentence Report, defendant is a native and citizen of the Dominican Republic. He entered the United States as a legal and resident alien on or about December 27, 1963. In 1988, defendant served six months at the Adult Correctional Institutions in Cranston, Rhode Island for a narcotic offense, after which he was transported to the Immigration and Naturalization Service ("INS") in Boston. In October, 1989, defendant was deported to the Dominican Republic.

According to defendant's own statement, after unsuccessful attempts to find work in the Dominican Republic, he returned to the

---

1. Section 1326 provides:
   (a) Subject to subsection (b), any alien who—
   (1) has been arrested and deported or excluded and deported, and thereafter
   (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior act,

   shall be fined under title 18, United States Code, or imprisoned not more than 2 years, or both.
   (b) Notwithstanding subsection (a), in the case of any alien described in such subsection—

   (1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under title 18, United States Code, imprisoned not more than 5 years, or both; or
   (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 15 years, or both.

2. Defendant also attempts to raise, once again, his initial challenge to the Indictment based upon the legitimacy of his underlying deportation Order. I decline to address these arguments as they are fully covered in the Court's August 7, 1992 Memorandum and Order denying defendant's Motion to Dismiss. *United States v. Vieira–Candelario,* 797 F.Supp. 117 (D.R.I.1992).

United States via Puerto Rico "[s]ometime in Autumn 1991." He rejoined his wife in Providence, Rhode Island, and resided with her until his arrest by INS agents on March 24, 1992.

On April 2, 1992, a grand jury indicted defendant on one count of unlawful reentry into the United States following deportation. Specifically, the Indictment charged:

> On or about March 24, 1992, AURELIA VIERA–CANDELARIA, an alien who had previously been arrested and deported from the United States, entered and *was found* in the District of Rhode Island *without having obtained the express consent of the Attorney General of the United States to re-enter the United States.* ·
>
> In violation of Title 8 United States Code Section 1326. (emphasis added).

On August 11, 1992, following an unsuccessful attempt to dismiss the Indictment, defendant pleaded guilty. Pursuant to the terms of a Conditional Plea Agreement, defendant agreed to plead guilty "to the Indictment charging a violation of Title 8, United States Code, Section 1326(a) (unlawful re-entry by a deported alien)." In exchange, the Government agreed that his plea would be conditional, allowing him to appeal the Court's denial of his motion to dismiss the Indictment.

At sentencing, Defendant objected to the Pre–Sentence Report's sentencing calculations on two grounds. First, he argues that because he actually "re-entered" the United States in October of 1991, application of the United States Sentencing Guidelines as amended effective November 1, 1991 violates the *Ex Post Facto* Clause. Second, he contends that 8 U.S.C. § 1326 describes separate and distinct offenses and that he may only be sentenced up to the two year statutory maximum provided under § 1326(a).

## II

### A

The *Ex Post Facto* clause of the United States Constitution prohibits the retrospective application of criminal laws that materially disadvantage the defendant. *See* U.S. Const., Art. I, § 9, cl. 3; Art. 1, § 10, cl. 1. While the clause may literally be read to prohibit application of any law passed "after the fact," a long line of Supreme Court cases has established that the *Ex Post Facto* Clause applies only to criminal laws. *See Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) ("[I]t has been long recognized by this Court that the Constitutional prohibition of *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them."). And, as defendant correctly notes, the circuits have uniformly held that retroactive application of substantive or offense level amendments to the U.S. Sentencing Guidelines which increase punishment violate the *Ex Post Facto* clause. *See, e.g., United States v. Harotunian,* 920 F.2d 1040, 1042 (1st Cir.1990); *United States v. Schaper,* 903 F.2d 891, 896 n. 4 (2d Cir.1990); *United States v. Suarez,* 911 F.2d 1016, 1020–22 (5th Cir.1990); *United States v. Worthy,* 915 F.2d 1514, 1516 n. 7 (11th Cir.1990).

Defendant's *ex post facto* claim rests primarily on the following theory: Because his deportation and unlawful re-entry occurred before the effective date of the November 1991 amendments to the Sentencing Guidelines, and because the amended Guidelines call for more severe penalties for unlawfully reentering aliens previously deported following aggravated felony convictions, he cannot be subject to the new Guidelines.

The Government argues, and I agree, that defendant's claim is indistinguishable from that raised by the defendant in *United States v. Alvarez–Quintero,* 788 F.Supp. 132 (D.R.I.1992). In *Alvarez–Quintero,* the defendant was convicted under 8 U.S.C. § 1326 of "being found" in the United States on November 19, 1991, after being deported subsequent to an aggravated felony conviction. At sentencing, he objected, on *ex post facto* grounds, to the application of the U.S. Sentencing Guidelines in effect as of November 1, 1991. He claimed that because his actual "re-entry" took place prior to November 1, 1991, only

the previous, unamended Guidelines were applicable to his conduct.

This Court rejected defendant's *ex post facto* claim. It found that because the Indictment charged defendant with "being found" in the United States under § 1326, and because the defendant *was* "found in" the United States on November 19, 1991, after the effective date of the November 1991 Amendments, sentencing under the amended guidelines was appropriate.

The facts of this case are identical. The defendant was charged with "being found" in the United States on March 24, 1992, in violation of § 1326. Defendant does not dispute that he was arrested by INS agents on March 24, 1992, but merely alleges that he entered the country "sometime in Autumn of 1991," before the effective date of the November 1991 amendments. I find that the Indictment properly charged defendant with "being found" in the United States on March 24, 1992, after the effective date of the November 1991 amendments. Therefore, sentencing under the current guidelines is appropriate and does not raise *ex post facto* concerns.

**B**

▪ Defendant's second objection to the Pre–Sentence Report, that § 1326 describes separate and distinct offenses and that he may only be sentenced up to the two-year statutory maximum under § 1326(a), presents a more difficult issue. In opposition, the Government primarily argues that § 1326 describes only a single offense with provision for enhanced penalties according to a defendant's criminal record.

The First Circuit has yet to address the question whether § 1326(a) and § 1326(b) describe separate and distinct offenses with different elements and maximum penalties, or a single offense with differing penalties based upon a defendant's criminal history. A recent Ninth Circuit decision, however, is directly on point. In *United*

*States v. Campos–Martinez*, 976 F.2d 589 (9th Cir.1992), the Court of Appeals considered a strikingly similar factual setting. The defendant was indicted under § 1326 for illegal reentry after deportation. The defendant pleaded guilty to the indictment, and stated at the plea hearing that he understood that the government would seek either a two-year or a five-year maximum sentence depending on his criminal history. The pre-sentence report recommended a sentence of 24–30 months based on the U.S. Sentencing Guidelines.

The defendant objected to this recommendation, arguing that he had pleaded guilty to a violation of subsection § 1326(a) and that his maximum sentence was therefore two years. The government argued that the defendant had pleaded guilty to a violation of subsection 1326(b)(1) and that his maximum sentence was therefore five years. At sentencing, the district court adopted the government's position, holding that the defendant had pleaded guilty to a violation of § 1326, in general, and that he could be sentenced under subsection 1326(b)(1). The Ninth Circuit reversed, holding explicitly that § 1326(a) and § 1326(b)(1) are different crimes with different elements and maximum sentences.[3]

In support of this conclusion, the Ninth Circuit looked to a previous Ninth Circuit case indirectly addressing the issue, *United States v. Arias–Granados*, 941 F.2d 996 (9th Cir.1991). In *Arias–Granados*, the court held that the use of a prior felony conviction under U.S.S.G. § 2L1.2(b)(1) did not violate the spirit of a bargain to plead guilty to a violation of § 1326(a). Specifically, the *Arias–Granados* court held that the criminal defendants had "received the full benefit of a bargain that permitted them to plead guilty to a crime with a lesser maximum sentence." *Id.* at 999. In its analysis, the court explained that subsections 1326(a) and 1326(b)(1) described two different crimes with different elements and maximum sentences:

---

**3.** While the Ninth Circuit's holding applies specifically to § 1326(a) (simple reentry following deportation) and § 1326(b)(1) (reentry following deportation subsequent to felony conviction), its rationale and conclusion presumably would apply to § 1326(b)(2) (reentry following deportation subsequent to aggravated felony conviction).

Both [defendants/appellants] had sustained previous felony convictions and had been deported. Both were charged with violation of 8 U.S.C. § 1326(b)(1), reentry following deportation for a felony conviction. The maximum sentence for that crime is five years.

Appellants then entered into plea negotiations and eventually both pleaded guilty to one count of 8 U.S.C. § 1326(a), simple reentry following deportation. The maximum penalty for that charge is two years in prison. *Id.* at 997 (footnote omitted).

Finally, in *Campos–Martinez,* the Ninth Circuit panel drew further support for its conclusion that subsections 1326(a) and 1326(b)(1) are different crimes with different elements and maximum sentences, from that circuit's previous interpretation of § 1326's sister statute, 8 U.S.C. § 1325.[4] In the court's view:

> Sections 1325 and 1326 form the core of the illegal entry prohibitions of the United States Code, and both statutes provide that a previous criminal conviction may result in a longer sentence. Much like section 1326, section 1325(a) provides (1) that illegal entry is a crime with a maximum sentence of six months and (2) that another illegal entry after a previous conviction for illegal entry is a crime with a maximum sentence of two years. In *United States v. Arambula–Alvarado,* 677 F.2d 51 (9th Cir.1982), and *United States v. Arriaga–Segura,* 743 F.2d 1434 (9th Cir.1984), this court made it clear that a previous conviction for illegal entry is an element of the felony offense under section 1325. We think that section 1326 should be interpreted in a similar manner. *Campos–Martinez,* 976 F.2d at 591.

Thus, the Ninth Circuit, in a case directly on point, considered the issues presented in the case at hand, and held conclusively that § 1326(a) and § 1326(b)(1) describe separate and distinct crimes with different elements and maximum sentences.

The Government urges this Court to reject the Ninth Circuit's conclusion as erroneous. In support, the Government points to a discussion of § 1326 in a recent Second Circuit opinion, *United States v. Campbell,* 967 F.2d 20 (2d Cir.1992). In *Campbell,* the defendant pleaded guilty to a one count indictment charging him "with unlawful presence in the United States." *Id.* at 22. On appeal, the defendant challenged the district court's application of the U.S. Sentencing Guidelines, specifically claiming that the court's use of his criminal record— to enhance the offense level and criminal history category as well as to calculate upward departures—amounted to impermissible "double counting." The appellate court rejected his claim.

In support of its decision, the *Campbell* court observed that, under § 1326, an alien defendant's deportation "subsequent to the commission of an aggravated felony *is relevant to measuring the severity of the crime of reentry following deportation.*" *Id.* at 24 (emphasis added). It also noted that the Guidelines employ a similar approach, predicated on the notion that "the severity of the *crime of reentry* depends on the reasons for the initial deportation." *Id.* (emphasis added).

In this context, the Second Circuit summarized the statutory sentencing scheme and its rationale:

> First, the statute under which [defendant] was convicted, 8 U.S.C. § 1326, ordinarily provides for a two year maximum sentence for unlawful reentry of the deported felon.[5] That maximum is

---

**4.** Section 1325(a) provides in relevant part:
Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense,

be fined ... or imprisoned not more than 6 months, or both, and for a subsequent commission of any such offense, be fined ... or imprisoned not more than two years, or both.

**5.** Though it is unclear, the court apparently was referring to § 1326(a)'s two-year maximum sentence for simple re-entry following deportation, rather than the five-year statutory maximum for

increased to fifteen years, however, where the reason for the prior deportation was the fact that the alien had been convicted of an aggravated felony. This strongly suggests that the flouting of American immigration laws is far graver where the defendant's prior deportation was for committing a serious crime than where the prior deportation was for a technical violation of the immigration laws. *Id.*

This dicta, the Government argues here, supports its interpretation of § 1326; that is, that defendant's crime is unlawfully reentering and remaining in the country, not having a prior felony conviction. Such a conviction, in the Government's view, bears only upon the severity of the crime of reentry and the penalty for committing it.

While I acknowledge that the Second Circuit's discussion of § 1326 in *Campbell* appears to support the Government's position in this case, I must note that *Campbell* concerned primarily a sentencing issue, whereas here defendant's challenge extends to the interpretation of the statute itself. The Second Circuit was neither presented with, nor did it decide, whether § 1326(a) and § 1326(b)(2) describe separate and distinct offenses.

Finally, the Government argues that the plain language of § 1326 unquestionably supports the conclusion that § 1326(b) is purely a sentencing provision. First, the Government notes that 8 U.S.C. § 1326 is entitled "Reentry of deported alien; *criminal penalties* for reentry of certain deported aliens" (emphasis added). According to the Government, subsection (a) defines the group of persons to whom the statute applies, the offense proscribed, and the two year penalty for that offense. The Government then notes that the first words in subsection (a) make it expressly "[s]ubject to subsection (b) of [§ 1326]." In other words, the Government argues, the portion of the statute defining the offense—and to which this defendant pleaded guilty—is expressly and specifically subject to the penalties detailed in subsection (b).

Continuing its exegesis, the Government argues that, "not surprisingly," subsection (b)—containing enhanced penalties for certain deported aliens—opens with prefatory language that its provisions apply, "[n]otwithstanding subsection (a) of [§ 1326]." But, according to the Government, subsection (b) does not presume to restate the offense in subsection (a). Rather, its penalties apply "in the case of any alien described in such subsection." Subsection (b) then increases the penalty for such aliens to 5 years if the "deportation was subsequent to a conviction for the commission of a felony (other than an aggravated felony)," 8 U.S.C. § 1326(b)(1), and 15 years if the "deportation was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(2).

I commend the Government for its fertile cerebrations in defending its interpretation of § 1326. With all due respect, however, I find that the "plain language" of the statute is, at best, ambiguous. Moreover, this Circuit has always faithfully adhered to the venerable proposition that criminal laws are to be strictly construed. *See United States v. Campos–Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971) (Immigration and Naturalization Act); *United States v. Anzalone*, 766 F.2d 676, 680 (1st Cir.1985) (Currency Transaction Reporting Act); *see also United States v. Batchelder*, 442 U.S. 114, 121, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) ("[A]mbiguities in criminal statutes must be resolved in favor of lenity."). As chief Justice Marshall once wrote:

> The Rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principal that the power of punishment is vested in the legislative, not in the judicial department. *United States v. Wiltberger*, 18 U.S. 76, 95, 5 Wheat. 76, 95, 5 L.Ed. 37 (1820).

The present ambiguity regarding the construction of § 1326 has been created by

---

unlawfully reentering deported felons found in § 1326(b)(1).

the government, itself. Moreover, the dramatic effect on this defendant's individual liberty is obvious. Under the Government's view, the defendant could potentially be subject to a 15 year penalty under § 1326(b)(2), as opposed to the 2 year maximum provided under § 1326(a). Finally, the Government has provided no persuasive reason for this Court to disregard the one case on point, *Campos–Martinez.* Thus, I find that § 1326(a) and § 1326(b)(2) describe distinct and separate offenses, with different elements and maximum penalties.

■ Having decided that § 1326(a) and § 1326(b)(2) describe separate and distinct offenses, it follows that the Government must allege, as an element of a violation of § 1326(b)(2), the existence of a defendant's prior aggravated felony conviction. Having failed to allege such a conviction, the Indictment in this case is sufficient only to allege a violation of § 1326(a).[6]

### III

For the reasons stated above, I find that § 1326(a) and § 1326(b)(2) describe separate and distinct offenses, with different elements and maximum penalties. Having failed to allege defendant's prior aggravated felony conviction, a critical element of a violation of § 1326(b)(2), the Indictment is sufficient only to charge defendant with a violation of § 1326(a). Defendant pleaded guilty to a violation of § 1326(a) under an agreement with the United States. In light of this Court's holding above, he may be

6. The Government raises two additional arguments that merit brief attention. First, it contends that defendant's claims are untimely under Fed.R.Crim.P. 12(b)(2), which requires that challenges to the Indictment be raised before trial, or in this case, before entering a plea. With respect to this claim, I note Rule 12(b)(2)'s specific exception for motions arguing that the Indictment fails to state a charge. Such motions may be raised at any time, even if raised for the first time on appeal. *See United States v. Saade,* 652 F.2d 1126, 1133 (1st Cir.1981); *United States v. Seuss,* 474 F.2d 385, 387 n. 2 (1st Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973); *see also* Wright, *Federal*

sentenced only up to the two-year statutory maximum under § 1326(a).

SO ORDERED.

*Practice and Procedure,* Criminal 2d, § 193, at 694 (1982).

Second, the Government claims that defendant was fully informed at the plea hearing, and expressly agreed in the Conditional Plea Agreement, that the government could seek up to a fifteen-year sentence. This argument ignores the basic principle that prosecutors cannot legitimize, through plea bargaining, the imposition of penalties in excess of the statutory maximum for the offense charged. *Launius v. United States,* 575 F.2d 770, 772 (9th Cir.1978). *See also United States v. Snider,* 957 F.2d 703, 707 (9th Cir.1992); *United States v. Baugh,* 787 F.2d 1131, 1133 (7th Cir.1986).