UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 92-2706

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSE BLAS VASQUEZ-OLVERA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

August 24, 1993

Before KING, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

I.   FACTS AND PROCEDURAL HISTORY

Jose Blas Vasquez-Olvera (Vasquez-Olvera), a Mexican national, was convicted by a state court in Houston, Texas on April 16, 1990 of the felony offense of delivery of cocaine and was sentenced to five years in state prison.  Approximately six months later, he was released to the United States Immigration and Naturalization Service (INS), which deported him to Mexico.  Approximately one month after being deported, the police again arrested Vasquez-Olvera in Houston, Texas for delivery of cocaine.  He was subsequently convicted in state court of that offense and sentenced

to 10 years in state prison.  The State of Texas then released Vasquez-Olvera on parole to a detainer for the federal charge that is the basis of the present case.  An indictment was returned against Vasquez-Olvera on April 8, 1992 in the United States District Court for the Southern District of Texas, charging that on December 6, 1990, Vasquez-Olvera, an alien who had previously been deported, knowingly and unlawfully was found in the United States without having obtained the consent of the Attorney General for reapplication for admission to the United States, in violation of 8 U.S.C. § 1326.  On June 8, 1992, Vasquez-Olvera pleaded guilty to the charges contained in the indictment, and the district court sentenced him to 78 months imprisonment, to be followed by a five year term of supervised release.  During Vasquez-Olvera's guilty plea hearing, pursuant to Rule 11, the court advised him that he could be sentenced up to 15 years in prison.[1]

## II.  DISCUSSION

Title 8 U.S.C. § 1326 provides:

(a) Subject to subsection (b) of this section, any alien who--

(1) has been arrested and deported or excluded and deported, and thereafter

---

[1]  The court stated:
> [p]unishment is up to 15 years in prison, a quarter of a million dollar fine, and a five year supervised release.  The effect of supervised release means, that if you violate the terms of your release, you can be sent up to five years more in prison.  So, you have the potential of having 20 years in prison.

2

(2) enters, attempts to enter, or is at anytime found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than two years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

8 U.S.C. § 1326

Vasquez-Olvera contends that he was indicted and pleaded guilty to a charge of reentry after deportation under 8 U.S.C. § 1326(a), which has a maximum punishment of two years.  However, he contends the district court erroneously sentenced him under the provisions of 8 U.S.C. § 1326(b)(2), which provides for a maximum punishment of 15 years.  Consequently, according to Vasquez-Olvera, the district court erred in sentencing him to 78 months imprisonment, and his sentence must be vacated.

On the other hand, the government contends it was proper for the district court to sentence Vasquez-Olvera under § 1326(b)(2), because subsection (b) is a sentence enhancement provision, not an element of the offense, and therefore it need not notify Vasquez-Olvera of the prior conviction in the indictment.  *See* United

3

States v. Lowe, 860 F.2d 1370, 1377-78 (7th Cir. 1988), *cert. denied*, 490 U.S. 1005 (1989); United States v. Affleck, 861 F.2d 97, 99 (5th Cir. 1988), *cert. denied*, 489 U.S. 1058 (1989).[2] Vasquez-Olvera, however, contends subsection (b) is a separate criminal offense, that his prior felony conviction was an element of that offense, and thus the government is required to charge him with that element of the offense in the indictment.[3] Accordingly, because the indictment did not charge him with a prior felony conviction, Vasquez-Olvera contends it was error for the district court to sentence him under subsection (b). *See* United States v. Davis, 801 F.2d 754 (5th Cir. 1986).

In sum, the issue narrowly framed is this: whether subsection (b) is a separate criminal offense or a sentence-enhancement provision?

This court in United States v. Davis, 801 F.2d 754 (5th Cir. 1986), enumerated four factors that are helpful in determining whether Congress intended a statutory provision to create an independent federal offense or a sentence-enhancement provision.

---

[2] In Affleck, the court held "[i]t was unnecessary for the jury to make any determination regarding the prior convictions of Affleck, since that was not an element of the offense for which he was indicted and convicted."

[3] Rule 7 of the Federal Rules of Criminal Procedure requires that the indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See* Hamling v. United States, 418 U.S. 87, 117 (1974) ([A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against him which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."))

4

Those factors are: (1) whether the statute predicates punishment upon conviction under another section, (2) whether the statute multiplies the penalty received under another section, (3) whether the statute provides guidelines for the sentencing hearing, and (4) whether the statute is titled as a sentencing provision. <u>Davis</u>, 801 F.2d at 756; <u>United States v. Jackson</u>, 891 F.2d 1151, 1152 (5th Cir. 1989), *cert. denied*, 496 U.S. 939 (1990).

In our view, application of these factors indicates that subsection (b) is a sentence enhancement provision. Initially, we recognize that subsection (a) contains the elements of the offense of unlawful reentry. Those elements are arrest, deportation, reentry to the United States, and lack of the attorney general's consent to reentry. *See* <u>United States v. Campos-Asencio</u>, 822 F.2d 506, 508 (5th Cir. 1987). Only after proof of the elements in subsection (a), do the punishment provisions for special types of offenders in subsection (b) apply. Therefore, the first <u>Davis</u> factor, which is the foremost feature of a sentence enhancement provision, is met.

Second, subsection (b)(1) raises the two year maximum penalty for reentry set forth in subsection (a) to 5 years upon proof that a deportation is subsequent to a felony other than an aggravated felony. Subsection (b)(2) raises the maximum penalty to 15 years for a deportation subsequent to an aggravated felony. While the penalty provisions in subsection (b) may not in a strict sense of the word be multipliers of the penalty provided for in subsection

5

(a), they are directly tied to it. This satisfies the second factor of the Davis test. *See* Jackson, 891 F.2d at 1152.

Third, Congress titled Section 1326 "[r]eentry of deported aliens; criminal penalties for reentry of certain deported aliens."[4] That title indicates that section 1326 provides for one crime--reentry of deported aliens--, but harsher penalties for certain classes of deported aliens--those committing felonies. Therefore, the fourth Davis factor is also satisfied.

We do not consider the fact that Subsection (b) does not satisfy the third Davis factor by providing guidelines for the sentencing hearing to be dispositive of its status as a sentence enhancement provision. Subsection (b) meets three of the four Davis factors and has enough of the common traits of a sentence enhancement provision for us to conclude that Congress intended for it to be a sentence enhancement provision.

Another reason, we believe that section 1326(b) is a sentence enhancement provision is because the plain language of the statute so indicates. In drafting the introductory language of subsection (a) and subsection (b), Congress intertwined the two subsections. The introductory language of subsection (a) states "subject to subsection (b) of this section," and the introductory language of subsection (b), states "notwithstanding subsection (a) of this

_____

    [4] Congress added subsection (b) and the initial line in subsection (a) to section 1326 in an amendment that was part of the Anti-Drug Abuse Act of 1988, 102 Stat. 4181, 4471. Congress titled the amendment "criminal penalties for reentry of certain deported aliens," which was added to the old title, "reentry of deported aliens."

6

section."  It is highly unlikely that Congress would structure the statute in such a way that subsection (b) is dependant on elements of subsection (a), if it intended for subsection (b) to be a separate criminal offense.  We interpret section 1326 to provide for one criminal offense, reentry of a deported alien, and to provide in subsection (b) stiffer penalties for those who illegally reenter after being convicted of a felony or an aggravated felony.[5]

Vasquez-Olvera urges us to follow the lead of the Ninth Circuit, which in three cases has previously decided that subsection (b) is not a sentence-enhancement provision, but is a separate criminal offense.

In United States v. Arias-Granados, 941 F.2d 996 (9th Cir. 1991), the defendants were charged with violating 8 U.S.C. § 1326(b)(1), re-entry following deportation for a felony conviction, which provided for a maximum punishment of five years.  The defendants then pleaded guilty under a plea agreement to violating one count of 8 U.S.C. § 1326(a), simple reentry after deportation, an offense with a maximum penalty of two years.  Id. at 997.  The court noted that two years was the maximum sentence that could be imposed upon the defendants and stated, "[a] prior felony conviction is an element of the crime with which appellants were

---

[5] No Senate or House Committee Report was submitted with the 1988 amendment to section 1326.  See 1988 U.S. Code Cong. and Adm. News 5937.  The government contends this alone suggests that Congress was creating a sentence enhancement provision, not a separate criminal offense.  We do not interpret this lack of legislative history to be indicative of Congress's intent.

charged, 8 U.S.C. § 1326(b)(1), but is not an element of the crime to which they pleaded guilty, 8 U.S.C. § 1326(a)." Id. at 998-99.

Shortly thereafter, in United States v. Gonzalez-Medina, 976 F.2d 570 (9th Cir. 1992), the defendants were charged with illegally reentering the United States following deportation as convicted felons. At trial, the defendants were convicted, but the government did not offer evidence that the defendants had prior felony convictions. Id. at 572. The district court then imposed sentences in excess of two years. Id. On appeal, the Ninth Circuit reversed the district court and held that subsections (a) and (b) constitute separate criminal offenses, and vacated the sentences as exceeding the lawful maximum. Id. at 573.

With the exception of United States v. Campos-Martinez, 976 F.2d 589 (9th Cir. 1992), the Ninth Circuit has not given its rationale for holding that subsection (b) is a separate criminal offense.

In Campos-Martinez, the defendant, who had previously been deported subsequent to a felony conviction, was indicted and pleaded guilty under section 1326 to illegal reentry after having been deported. The district court sentenced him to thirty months in prison, holding that he had pleaded guilty to violating section 1326 generally, and that he could be sentenced under subsection (b)(1). Id. at 590. On appeal, the Ninth Circuit vacated the defendant's sentence and remanded for resentencing, holding that subsection (b) was a separate criminal offense. Id. at 591-92.

8

In reaching its decision in <u>Campos-Martinez</u>, the court relied almost exclusively on case law interpreting section 1325(a), the alien illegal entry statute, which it found to be an analogous statute.[6]

We believe the two sections are too different for Congress to have intended for them to be interpreted similarly. Section 1325(a) provides that the offense of illegal entry is a misdemeanor with a maximum punishment of six months, while a subsequent illegal entry after a previous conviction for violating section 1325(a) is a felony with a maximum punishment of two years.[7] Therefore, having a prior conviction under section 1325(a) subjects a defendant to more than a simple sentence enhancement; instead, it

---

[6] The court relied on <u>United States v. Arambula-Alvarado</u>, 677 F.2d 51 (9th Cir. 1982), and <u>United States v. Arriaga-Segura</u>, 743 F.2d 1434 (9th Cir. 1984), both of which interpreted section 1325(a).

[7] Section 1325(a) provides:

> [a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than six months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than two years, or both.

8 U.S.C. § 1325(a).

subjects that defendant to an entirely different class of offense, a felony.[8]

In conclusion, the construction of section 1325(a) and section 1326 are quite different, and there is nothing to suggest that Congress patterned section 1326 in a similar vein to that of section 1325(a). We therefore decline to follow the Ninth Circuit's prior case law in this regard.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

KING, Circuit Judge, dissenting:

Because I believe that the majority incorrectly classifies 8 U.S.C. § 1326(b) as a sentencing enhancement statute rather than a separate offense, I respectfully dissent. Rather than accepting the majority's reasoning, I adopt the analysis of two other courts that have addressed this precise issue. See United States v. Campos-Martinez, 976 F.2d 589, 590-92 (9th Cir. 1992); United States v. Vieira-Candelario, 811 F. Supp. 762, 765-68 (D.R.I. 1993).[9] In those two cases, the courts held that § 1326(b) created

---

[8] Further, we disagree with the premise that the Ninth Circuit used in Campos-Martinez to reach its conclusion, which is that the portion of section 1325(a) that provides the punishment for a subsequent illegal entry is a sentence enhancement provision. In our view, section 1325(a) has many of the common attributes of a sentence enhancement provision and should be interpreted as a sentence enhancement provision.

[9] I observe that in a recent case the First Circuit expressly noted this issue but saw no need to resolve it. See United States v. Zapata, ___ F.2d ___, 1993 U.S. App. LEXIS 17992 at *15 n.5 (1st Cir. July 19, 1993) (citing Vieira-Candelario, supra).

a separate offense, which requires the Government to allege and prove beyond a reasonable doubt all of the elements of that offense in the indictment before a defendant may be sentenced under § 1326(b)'s separate penalties.[10]

In the instant case, the indictment charged Vasquez-Olvera as follows:

> On or about December 6, 1990, . . . JOSE BLAS VASQUEZ-OLVERA, . . . an alien who had previously been deported, knowingly and unlawfully was found in the United States at Harris County, Texas, the said defendant having not obtained the consent of the Attorney General of the United States for reapplication by the defendant for readmission into the United States.

The indictment then specified: "[v]iolation: Title 8, United States Code, Section 1326."

As the majority correctly observes, what is at issue is whether the additional matter in subsection (b) of § 1326 -- the requirement that the alien must have been deported "subsequent to a conviction" of a felony or aggravated felony -- is a separate "element," thus creating a separate offense from § 1326(a), or is simply a sentencing enhancement factor applicable after conviction under § 1326(a).[11]  Vasquez-Olvera argues that because he was indicted for, and pled guilty to, nothing more than "simple reentry" after deportation, the district court unlawfully sentenced him under § 1326(b) rather than under § 1326(a).  I agree.

---

[10] It is well-established that the Government must include all elements of an offense in the indictment and prove each element beyond a reasonable doubt. See Hamling v. United States, 418 U.S. 87, 117 (1974); see also Jill C. Rafaloff, Note, *The Armed Career Criminal Act: Sentence Enhancement Statute or New Offense?*, 56 FORDHAM L. REV. 1085, 1087 & nn. 10-13 (1988) (citing cases).

[11] See Majority Opinion, slip op., at pp. 2-3, ___ F.2d at ___, for a full quotation of subsections (a) and (b).

As the majority correctly observes, in this circuit, the leading case on distinguishing the two types of statutes is United States v. Davis, 801 F.2d 754 (5th Cir. 1986). In Davis, we noted a number of factors that are helpful in identifying a sentencing enhancement statute:

> i) whether the statute "impose[s] an increased punishment for those convicted under another statutory provision";
>
> ii) whether the statute's penalty is simply a "multiplier" of another statute's penalty provision;
>
> iii) whether the statute is titled as a "sentencing" or "penalty" provision; and
>
> iv) whether there are separate procedures for sentencing under the statute.[12]

Davis, 801 F.2d at 756. The Davis court, in keeping with general principles of statutory interpretation, also held that the legislative history may be consulted to determine Congress' intent where the language of the statute is ambiguous. Id. The majority concludes that three of the four Davis factors apply -- (i)-(iii) -- and thus holds that Vasquez-Olvera was properly sentenced under § 1326(b).

I believed that the majority errs in holding that the first three Davis factors are clearly applicable. The majority states that the first factor applies because § 1326(b) simply refers back to § 1326(a) -- that is, only after the three elements of subsection (a) are proven may an enhanced sentence possible under

---

[12] Davis adopted those four factors from the United States Supreme Court's decision in Garrett v. United States, 471 U.S. 773 (1985). Garrett involved the analogous issue of distinguishing between a separate offense or lesser-included offense for purposes of the Double Jeopardy Clause.

subsection (b) be imposed in the case of an alien whose original deportation was "subsequent to the commission of a felony."  In support of its position, the majority points to the first clause of each subsection, which read, respectively, "(a) *Subject to* subsection (b) of this section . . . " and "(b) *Notwithstanding* subsection (a) of this section . . ." (emphasis added).  The majority states that Congress "intertwined" the two subsections, suggesting that subsection (b) is dependent on subsection (a).  Majority Opinion, slip op. at p.6, ___ F.2d at ___.

I believe that, while the majority's interpretation is a permissible one, there is another, equally permissible interpretation of the statute.  I believe that the drafters of the 1988 amendments to § 1326[13] could have intended simply to incorporate the three elements of § 1326(a) into § 1326(b) and simply add the additional element regarding a prior conviction of a felony or aggravated felony.[14]  See Vieira-Candelario, 811 F. Supp. at 767.  In this regard, I observe that subsection (b) states that "in the case of any alien *described in*" subsection (b).  It does *not* say "in the case of any alien *convicted of*" the offense set forth in subsection (a).  I further believe that the fact that the use of the phrase "*[n]otwithstanding* subsection (a)," if

---

[13] In 1988, Congress amended § 1326 by adding what is presently in subsection (b) and bifurcating the statute. See Majority Opinion, slip op. at 6 n.4, ___ F.2d at ___ n.4.

[14] Under the plain language of § 1326(a), the elements of that offense are: i) an arrest and deportation or exclusion and deportation, ii) reentry or attempted reentry into the United States, and iii) the absence of consent by the United States Attorney General.  United States v. Campos-Asencio, 822 F.2d 506, 508 (5th Cir. 1987) (interpeting § 1326 prior to its bifurcation into subsections (a) and (b), when the entire statute was what is presently subsection (a)).

anything, argues in favor of holding that the drafters of subsection (b) intended it to be a separate offense.[15]

As for the second Davis factor, the majority holds that the enhanced sentencing range in subsection (b) may be interpreted to be "multipliers" of the sentencing range prescribed in subsection (a). See Majority Opinion, slip op. at pp.5-6, ___ F.2d at ___. I disagree. Common sense suggests that a "multiplier" in the context of a sentencing enhancement statute generally refers to an increase by two or three fold at the most. However, the potential for such an draconian increase under subsection (b) -- from a maximum of two to fifteen years, i.e., over a seven-fold increase -- suggests that a separate offense was intended. Cf. McMillan v. Pennsylvania, 477 U.S. 79 (1986). In McMillian, the Court suggested that in cases where a certain sentencing fact is a "tail which wags the dog of the substantive offense" in terms of the severity of the sentence, the reasonable-doubt standard of proof rather than preponderance standard -- the latter typically being used during the sentencing phase -- should be required because that sentencing fact is in effect an element of the offense. Id. at 88.

The majority believes that the third Davis factor -- whether the title of the statute suggests that it is a sentencing enhancement provision -- also has been established by the Government. The same argument was made by the Government in United States v. Vieira-Candelario, 811 F. Supp. 762, 767 (D.R.I. 1993).

---

[15] Although the use of the phrase "subject to" in subsection (b) admittedly could be interpreted to suggest that subsection (b) is a penalty enhancement, the ambiguity of the statute as a whole requires the application of the "rule of lenity," discussed infra.

In a persuasive opinion, the court rejected the Government's argument by holding that the statute's title "is, at best, ambiguous." Id. I agree. Section 1326 is entitled, "Reentry of deported alien; criminal penalties for reentry of certain deported aliens." The majority accepts the Government's argument that the single crime provided for -- "[r]eentry of deported aliens" -- means that the statute's drafters must have intended subsection (b) to only be a penalty enhancement provision. Majority Opinion, at p.6, ___ F.2d at ___. While again I agree that is certainly a permissible interpretation of the statute's title, I believe that the bifurcated structure of § 1326 and the apparent incorporation of subsection (a)'s elements into subsection (b) also suggests that Congress intended the broad title of offense -- "[r]eentry of deported aliens" -- to apply to both subsections (a) and (b). Moreover, the majority ignores the fact that Congress could have easily titled subsection (b) as a separate penalty provision, which it chose not to do; the failure to do so is noteworthy. Instead, it apparently incorporated subsection (a)'s elements into subsection (b), suggesting that subsection (b) was intended to be independent of subsection (a).

Thus, having applied the Davis factors, it is quite apparent that the language and structure of § 1326 provide no definitive answer to whether subsection (b) was intended to be a penalty enhancement statute or a separate offense. As the majority notes, there is no legislative history to which we could turn for

clarification of an ambiguous statute.[16]  Thus, we are faced with a classic case where the longstanding "rule of lenity" is appropriately applied.  Simply put, that rule provides that "ambiguities in criminal statutes must be resolved in favor of lenity" for the criminal defendant.  United States v. Batchelder, 442 U.S. 114, 121 (1979); Ladner v. United States, 358 U.S. 169, 177 (1958) ("Neither the wording of the statute nor its legislative history points clearly to either [of two permissible] meaning[s].  In that circumstance, this Court applies a policy of lenity and adopts the less harsh meaning."); see also United States v. Campos-Serrano, 404 U.S. 293, 297 (1971); United States v. Wiltberger, 18 U.S. 76, 95 (1820); United States v. Abreu, 962 F.2d 1447, 1450-51 (10th Cir. 1992) (en banc) (discussing Supreme Court authority on "rule of lenity"); Annotation, 62 L.Ed. 2d 827.

Because I believe that this is an appropriate case for application of the "rule of lenity" to an ambiguous statute with no clarifying legislative history, I respectfully dissent.  I would vacate Vasquez-Olvera's sentence and remand with instructions that the district court must sentence him only under 8 U.S.C. § 1326(a).

---

[16] I agree with the Ninth Circuit's view that the fact that a previous conviction is a separate element under 8 U.S.C. § 1325 -- § 1326's sister statute regarding illegal entry of aliens -- is some indication that § 1326(b) was intended to be a separate offense by the statute's drafters.  See United States v. Campos-Martinez, 976 F.2d 589, 591 (9th Cir. 1992).  It is well-established that a court may interpret an ambiguous statute by comparison to an analogous statute.  See United States v. Abreu, 962 F.2d 1447, 1451 (10th Cir. 1992) (en banc) (citing United States v. American Trucking Ass'ns, 310 U.S. 534, 543-44 (1940)).

In a footnote, the majority, with no discussion, states that it does not believe that a prior conviction is a separate element under § 1325.  See Majority Opinion, slip op., at p.10 n.8, ___ F.2d ___.  My research reveals that the only other authority regarding this issue is a series of Ninth Circuit cases, which hold that a prior conviction is a separate element under § 1325.  See United States v. Equihua-Juarez, 851 F.2d 1222, 1226 (9th Cir. 1988) (citing cases).  Without going into an extended discussion here, my application of the Davis factors to § 1325 indicates that the Ninth Circuit's interpretation is correct.