United States Court of Appeals,

Eleventh Circuit.

No. 94-2001.

UNITED STATES OF AMERICA, Plaintiff-Appellee,

v.

JOSE SANTIAGO PALACIOS-CASQUETE, Defendant-Appellant.

June 15, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-100-CR-J-10), William T. Hodges, District Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

GOODWIN, Senior Circuit Judge:

Jose Santiago Palacios-Casquete pled guilty to being a deported alien found unlawfully in the United States on December 11, 1992 in violation of 8 U.S.C. § 1326. He appeals his guideline sentence of 96 months.

The principal contentions on appeal are (1) that the sentencing court erred in treating 8 U.S.C. § 1326(b)(2) as a sentencing enhancement subsection rather than as the denunciation of a separate crime, and (2), that because Palacios-Casquete was present within the boundaries of the United States after his deportation in 1987 for some years prior to December 11, 1992, when he was visited by a special agent of the INS at a Florida state prison, he was entitled to be sentenced according to the guidelines in effect earlier than those applicable to the time charged in the indictment.

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

## I. *The Indictment*

The charge to which he pled guilty reads: "On or about December 11, 1992, at Lake Butler, in the Middle District of Florida, JOSE SANTIAGO PALACIOS-CASQUETE, the defendant herein, an alien who had been arrested and deported from the United States at Miami, Florida, on or about March 6, 1987, was found unlawfully in the United States without first having applied for and received permission of the Attorney General of the United States to reapply for admission. In violation of Title 8 United States Code, Section 1326." The indictment form also noted that the maximum penalty was 15 years.

## II. *The Statute*

At his sentencing hearing December 17, 1993, Palacios-Casquete argued first that Section 1326 creates three distinct levels of crime and punishment. The first level, subsection (a), to which he says he pled guilty, covers aliens who have been deported and are "at any time found in" the United States, for which the penalty is a fine and custodial punishment not to exceed two years. The second level, subsection (b)(1), applies to any alien described in subsection (a) who was deported after a conviction of a felony (other than an aggravated felony) and who was punishable by a fine and a custodial sentence not to exceed five years. The third level, subsection (b)(2) applies to any alien described in subsection (a) who was deported after a conviction of an aggravated felony and who was (in 1993) punishable by a fine and a custodial sentence not to exceed fifteen years.

## III. *Challenge of Subsection (b)(2)*

Palacios-Casquete argues that because the indictment to which he pled guilty did not mention any prior conviction, he had no notice that he was pleading to any offense other than being found in the United States after having been deported. He asserts that a due process violation occurred when the sentencing court treated § 1326(b)(2) as a sentence enhancement provision rather than a statement of a separate offense. He does not deny his well documented criminal history, but argues that if the government intended to rely upon it in prosecuting him, his conviction of one or more aggravated felonies should have been included in the indictment before he pled guilty. Accordingly, he asserts that his guilty plea admitted only facts constituting a violation of subsection (a) of the statute. It follows, he argues, that he was entitled to be sentenced, not under subsection (b)(2) which enhanced his sentence by a factor of seven, but under subsection (a).

IV. *Relevant Guideline Time Period*

Palacios-Casquete's second argument is that because he could have been "found" in state custody on any of several dates after he was arrested by Florida law enforcement officers in 1988, he was entitled to be sentenced for violating § 1326 under the guidelines in effect in 1988, or alternatively, in effect on February 22, 1990 when he was again arrested in Florida, and subsequently convicted for possession and delivery of cocaine. He argues that the federal government (INS) must have known of his violation of 8 U.S.C. § 1326 long before it got around to prosecuting him in December of 1992, and therefore it was error to sentence him under the less

lenient punishment scheme in effect at the time charged in the indictment. This argument ignores his guilty plea, which admitted the truth of the charge that he was "found" on December 11, 1992.

## V. *The Sentencing Hearing*

The sentencing court considered all of the appellant's arguments at the sentencing hearing. The court then treated subsection (b)(2) as a sentence enhancing provision, and not as the denunciation of a separate offense.

The court accepted the presentence report which increased the base offense level by 16 pursuant to U.S.S.G. § 2L1.2(b)(2) because of Palacios-Casquete's 1986 conviction for an aggravated felony, which preceded his 1987 deportation. After crediting him with a subtraction of 3 levels for acceptance of responsibility, the Presentence Report showed a total offense level of 21, and a criminal history category of VI. The guideline custodial range was thus 77 to 96 months. (The court imposed the sentence at the upper end of the range, after noting for the record the defendant's conspicuous propensity for recidivism.)

## VI. *"Sentencing Enhancement, or New Crime"*

The parties have cited cases from five other circuits which have dealt with the question whether subsections (b)(1) and (b)(2) state separate crimes or are merely sentence enhancing provisions for the specific offense of being found in the United States after deportation. Only one court has treated the subsections as defining separate crimes. *See United States v. Campos-Martinez,* 976 F.2d 589 (9th Cir.1992) (sections 1326(a) and 1326(b) state separate crimes); *United States v. Gonzalez-Medina,* 976 F.2d 570

(9th Cir.1992) (same) (citing dicta in *United States v. Arias-Granados,* 941 F.2d 996 (9th Cir.1991) (plea bargain)).

All the other circuits have rejected the Ninth Circuit's line of cases. *See United States v. Crawford,* 18 F.3d 1173 (4th Cir.1994) (section 1326(b) is a sentence enhancement provision); *United States v. Forbes,* 16 F.3d 1294 (1st Cir.1994) (same); *United States v. Vasquez-Olvera,* 999 F.2d 943 (5th Cir.1993) (King J., dissenting), *cert. denied,* --- U.S. ----, 114 S.Ct. 889, 127 L.Ed.2d 82 (1994) (same); *see also United States v. Cole,* 32 F.3d 16 (2d Cir.1994) (a sentence-enhancement provision rather than a separate offense). *See also United States v. Vieira-Candelario,* 811 F.Supp. 762 (D.R.I.1993) *aff'd by* 6 F.3d 12 (1st Cir.1993) (sections 1326(a) and 1326(b) state separate crimes).

This court has stated, in *United States v. McGatha,* 891 F.2d 1520, 1522-23 (11th Cir.1990), that we must examine the language, structure, and legislative history in determining whether the statute in question denounces a separate crime or provides for an enhanced sentence. In *McGatha,* we were dealing with a weapons charge and a plea agreement. The defendant had been charged with two counts of violating 18 U.S.C. §§ 922(g)(1) and 924 (a previously convicted felon in possession of a firearm). McGatha, after receiving notice that the government would seek enhanced sentencing under 18 U.S.C. § 924(e)(1), pled guilty to one count of the indictment.

The government dismissed the other count. The district court in *McGatha* treated § 924(e)(1) as a sentence enhancement provision, and not as the creation of a new, separate offense which must be

alleged in the indictment and proved at trial.  We affirmed that conviction.  (It was not necessary in *McGatha* to discuss notice and due process because the plea agreement had followed full disclosure by the government of its intent to seek the enhanced penalty prior to the entry of the guilty plea.)  It was not necessary in *McGatha* to decide, but it has now become necessary to decide whether section 1326 is a sentencing enhancement statute or a statute in three parts, each denouncing a separate crime.

We join the four other circuits that discussed the legislative evolution of § 1326 through its various amendments, and concluded that Congress intended § 1326 to denounce one substantive crime—unlawful presence in the United States after having been deported, with the sentence to be enhanced incrementally for those aliens who commit the offense after having been deported following convictions for "nonaggravated" or "aggravated" felonies.  We also find helpful the reasoning of the First Circuit when it considered the prejudicial effect of placing before the jury an indictment charging, and proof establishing, that the defendant committed the offense after having been convicted of specific prior felonies. *United States v. Forbes,* 16 F.3d at 1298-1300.

Palacios-Casquete now argues that the government should be required to plead and prove the former convictions because it is frequently more difficult to prove former convictions than to prove that a person present in court has "been found in" the United States.  Whatever may be the litigation strategy and logical persuasion of these arguments, the sentencing court in this case applied subsection (b)(2) as an enhancing provision consistently

with our reasoning in *McGatha,* and that application was free from error.

VII. *Was Date of the Crime Correctly Charged?*

Palacios-Casquete's argument that the INS had imputed, or constructive, notice that he was a previously deported alien present within the United States at a date earlier than the date upon which he was actually discovered by an investigating agent to be a member of Florida's prison population might have some theoretical attraction if the INS operated in a more perfect world. However, there is no showing that the fifty states and the territories send morning reports to the INS revealing the national origins and immigration status of their incoming prisoners. In the case at bar, the INS investigator testified that she made routine, periodic visits to state institutions in her district of responsibility, and checked the records of new inmates for possible candidates for deportation or prosecution under § 1326. She testified that she found Palacios-Casquete in one of her routine investigations. The trial court accordingly found that there was no prejudicial or invidious discrimination against this defendant in the INS proceeding and no reason to back date the offense (resubmit to the grand jury for an amended indictment) to give the defendant the benefit of earlier penalty provisions that had been in effect in 1988 or 1990. The government had no duty to anticipate that this particular alien was present in the Florida prison system at any time before he was actually found. We find no error in this ruling.

VIII. *Void for Vagueness*

Finally, Palacios-Casquete argues that § 1326 is void for vagueness, and that this defect, which he characterizes as jurisdictional, was not waived by his guilty plea. The indictment clearly charged a violation of 8 U.S.C. § 1326. At the taking of the guilty plea, Fed.R.Crim.P. 11 was followed, and the defendant was told in English and Spanish what the potential penalties could be. Because the statute is not vague, we do not reach the appellant's request that we review our earlier cases and decide that a guilty plea does not waive a constitutional challenge to a criminal statute. *Cf. Askew v. Alabama,* 398 F.2d 825, 826 n. 1 (5th Cir.1968). A guilty plea, however, does not waive the right of an accused to challenge the constitutionality of the statute under which he is convicted. *See, e.g., Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *United States v. Ury,* 106 F.2d 28, 124 A.L.R. 569 (2d Cir.1939).

AFFIRMED.